CENTERRE TRUST COMPANY OF ST. LOUIS, Trustee, Plaintiff-Appellant, v. THE CONTINENTAL INSURANCE COMPANY, Defendant-Appellee.

Fifth District   No. 5—86—0832

Opinion filed March 16, 1988.

Paul D. Giamanco, of Paul D. Giamanco, P.C., of Mt. Vernon, and Joseph J. Trad, of Lewis & Rice, of St. Louis, Missouri, for appellant.

David M. Duree, of O'Fallon, and David M. Duree, of Leritz, Reinert & Duree, of St. Louis, Missouri, for appellee.

JUSTICE KARNS delivered the opinion of the court:

Centerre Trust Company of St. Louis appeals a judgment of the circuit court of Jefferson County in which Centerre was held to have waived its right to liquidated damages arising from a breach of a construction contract. The trial court held that the making of final payment waived liquidated damages under the contract and that Centerre's conduct in light of its liquidated damage claim also evidenced an intent to relinquish its right to claim liquidated damages and therefore constituted a waiver under the principles of common law.

On November 3, 1979, the Grove Partnership entered into a contract with U.D.E., Inc. (hereinafter contractor), for the construction of a facility then known as the Jefferson Memorial Hospital, later known as the Mt. Vernon Hospital Project. Art Lewis and Glen Lewis executed the contract on behalf of Grove Partnership and one of the Lewises executed the contract on behalf of the contractor. Theodore Hoener was the project architect.

Funding for the project was provided by a $9.375 million revenue bond issue underwritten by Hereth, Orr and Jones. To obtain tax-exempt status for the bonds, a nonprofit corporation known as the Jefferson County Health Authority (the Authority) was organized to hold legal title to the project. Another entity, Mt. Vernon Hospital, Inc., was organized to operate the hospital and the Authority, as landlord, executed a lease with Mt. Vernon Hospital, Inc.

Centerre Trust was chosen as trustee for the bondholders and executed an indenture of mortgage and deed of trust with the Authority. Centerre agreed, pursuant to the trust agreement, to collect the revenue from the sale of the bonds and the revenue derived by the Authority from rent for the hospital and to distribute principal and interest to the bondholders as the bonds were retired. Centerre further agreed to distribute construction funds to the contractor as the work progressed, in accordance with the lease and the trust.

Pursuant to the lease, a bond was obtained to insure the contractor's performance. At the time, only $1.5 million of work remained to be performed under the contract and this was the amount of the bond issued by defendant, Continental Insurance Company. A dual obligee rider was also issued making Centerre a direct beneficiary of the performance bond.

Article 3 of the construction contract provides that "substantial completion" of the work was to be achieved by January 1, 1981 (the "substantial completion date"). Article 3 further provides that the contractor must pay the owner liquidated damages in the amount of $3,000 per day for each calendar day that transpired between the substantial completion date and the date of actual completion, such liquidated damages to be paid to the owner within 60 days after the date of actual completion.

The Mt. Vernon Hospital Project was actually completed on May 27, 1981, almost five months after the substantial completion deadline. The record shows that Centerre continued disbursing construction funds to the contractor after January 1, 1981, even though it knew that a claim for liquidated damages had arisen. The final payment of $50,000 was made on May 21, 1981.

On April 18, 1983, Centerre filed suit against Continental based on the dual obligee rider to the performance bond, seeking $438,000 in damages. After a bench trial, the circuit court of Jefferson County ruled that Centerre had waived its claim to liquidated damages by virtue of section 9.9.4 of the "General Conditions." Section 9.9.4 states:

> "The making of final payment shall constitute a waiver of all claims by the Owner except those arising from:
> .1 unsettled liens,
> .2 faulty or defective work appearing after substantial completion,
> .3 failure of the work to comply with the requirements of the Contract Documents, or
> .4 terms of any special warranties required by the Contract Documents."

The trial court ruled that by making the final $50,000 payment, Centerre waived its claim to liquidated damages.

The trial court also ruled that Centerre's conduct after January 1, 1981, constituted a common law waiver.

On January 26, 1981, after Centerre became aware of its liquidated damages claim, it was advised by counsel for the revenue bond underwriters to withhold all contract balances still in Centerre's control to cover its claim for liquidated damages. On February 12, 1981, Centerre agreed to withhold all contract balances it was then holding. On April 27, 1981, Centerre entered into an agreement with the contractor whereby it agreed to release the contract balances it was then holding provided that the contractor would loan such payments to the operating capital account of the project. This agreement was prompted by the severe financial difficulties the project was encountering, and the contractor eventually loaned over $1 million to the project before the contractor went bankrupt. The contractor also agreed to subordinate its repayment rights to Centerre's obligation to pay the revenue bond holders. In September 1981, Centerre wrote a letter to the contractor and Mt. Vernon Hospital discussing the serious financial difficulties. The letter made no mention of Centerre's claim for liquidated damages.

Based on these factors, the trial court ruled that Centerre's conduct evinced an intentional relinquishment of a known right and, as such, effected a common law waiver of that right. The trial court also stated that such conduct waived section 7.6.2 of the "General Conditions," which stated:

> "No action or failure to act by the Owner, Architect or Contractor shall constitute a waiver of any right or duty afforded

any of them under the Contract, nor shall any such action or failure to act constitute an approval of or acquiescence in any breach thereunder, except as may be specifically agreed in writing."

The trial court reasoned that as Centerre's conduct effectively waived this provision of the contract, its final payment to the contractor effectively waived its claim to liquidated damages under section 9.9.4 of the "General Conditions," and such conduct also waived Centerre's claim under principles of common law.

Centerre's first argument on appeal is that the trial court erred in ruling that Centerre had waived liquidated damages under section 9.9.4 of the contract. Centerre maintains that its obligation to make final payment to the contractor arose before the contractor's obligation to remit the liquidated damages.

Article 3 of the contract provides that if the work was not substantially complete by January 1, 1981, the "substantial completion date," then

"UDE [the contractor] shall be obligated to pay to Owner, its successors and assigns, within sixty (60) days after the actual completion of the Work (the 'Actual Completion Date'), as liquidated damages (and not a penalty) an amount equal to Three Thousand Dollars ($3,000) (hereinafter called the 'Daily Damages') multiplied by the number of calendar days which have transpired between the Substantial Completion Date and the Actual Completion Date (hereinafter called the 'Liquidated Damages Period')."

Article 6 of the contract provides that final payment was to be made "within ten days from the issue of the certificate of substantial completion by the Architect." Based on these two provisions, Centerre maintains that the contract required Centerre to pay the contractor the full price upon completion of the work and then wait 60 days for the contractor to remit the accrued liquidated damages. Centerre takes the position that it had no claim for payment of the liquidated damages at the time final payment was due. We find this to be a strained and unreasonable construction of the contract documents.

■■ While article 6 states that final payment was due 10 days after the architect issued the certificate of substantial completion, we believe this contemplates issue of the certificate by the substantial completion date. We do not believe Centerre's position that it had to make final payment and then wait 60 days after actual completion for the contractor to remit the accrued liquidated damages is a reasonable one. Once the contractor breached its obligation, Centerre was

no longer obligated to continue making payments and would have been within its rights to withhold all remaining contract balances to cover the accruing liquidated damages. Even under Centerre's interpretation of the contract documents, the failure of the contractor to complete the project by the substantial completion date would constitute an anticipatory breach relieving Centerre of the duty to make further payments. We also note that section 9.6.1 of the contract provides that the architect may decline to certify requests for payment and may nullify previous certification to protect the owner from loss because of reliable evidence that the work will not be completed on time. This clearly indicates that the contract contemplates the owner withholding payments in the event the contractor fails to meet the substantial completion deadline. We note further that in response to the January 28, 1981, letter from the bond underwriters' counsel advising Centerre to withhold all construction fund balances due and owing to cover the accruing liquidated damages, Centerre responded in a letter dated February 17, 1981, that it would do so. This further indicates that Centerre was aware that it had the right to withhold payments to cover the accruing liquidated damages. Finally, we note that not only did Centerre wait 60 days after actual completion of the project, it waited over two years to take action on its liquidated damages claim.

In concluding that Centerre had waived its liquidated damage claim, the trial court relied on section 9.9.4, which states:

"The making of final payment shall constitute a waiver of all claims by the Owner except those arising from:
.1 unsettled liens,
.2 faulty or defective work, appearing after substantial completion,
.3 failure of the work to comply with the requirements of the Contract Documents, or
.4 terms of any special warranties required by the Contract Documents."

Under this section of the contract, it is clear that when Centerre made final payment on the contract, it waived its claim for liquidated damages. The rule of law in Illinois is that final payment on a construction contract does not waive claims arising from latent defects. (*Intaglio Service Corp. v. J. L. Williams & Co.* (1981), 95 Ill. App. 3d 708, 420 N.E.2d 634.) Implicit in this rule, however, is the rule that final payment does waive all known claims. Even if we were to agree with Centerre that it had no right to demand payment of its liquidated damage claim until 60 days after completion of the project, the

claim still existed prior to this time and final payment in light of that claim effectively waived it under section 9.9.4.

■■ Centerre argues that because the work was not substantially completed by the substantial completion deadline, the work did not comply with the contract documents and, therefore, subsection 3 of section 9.9.4 preserves its liquidated damages claim even though final payment was made. Section 1.1.3 defines "the work" as the

"completed construction required by the Contract Documents and includes all labor necessary to produce such construction, and all materials and equipment incorporated in such construction."

Given this definition of "work," we find subsection 9.9.4.3 refers to defects in material and workmanship, not failure to comply with time deadlines. Further, if we were to follow Centerre's interpretation of subsection 9.9.4.3 to its logical end, we would be forced to conclude that any noncompliance, known or unknown, would not be waived by final payment. Such a reading of this exception is so broad that it all but engulfs section 9.9.4. We conclude that subsection 3 is simply an iteration of the general rule of law that final payment does not waive damages arising from latent defects.

■■ Centerre also argues that the trial court erred in ruling that it had waived its claim to liquidated damages under the principles of common law. To constitute a waiver under common law, the evidence must show a clear intent to voluntarily relinquish a known right. (*Saverslack v. Davis-Cleaver Produce Co.* (7th Cir. 1979), 606 F.2d 208.) Intent is a question of fact, and as such, we will not disturb the trial court's finding with respect to that intent unless it is clearly against the manifest weight of the evidence.

In the present case there are numerous facts which support the trial court's finding. On January 26, 1981, counsel for the bond underwriters wrote Centerre a letter advising it to withhold all construction fund balances under Centerre's control to cover its claim for liquidated damages. Centerre responded by letter that it would do so. On April 27, 1981, Centerre entered into an agreement whereby Centerre would release all the construction funds it was holding provided that the contractor loaned this money back to the project. With full knowledge of its claim, Centerre proceeded to release the funds it was holding pursuant to this agreement. In September of 1981, Centerre sent a letter to the contractor discussing the project's financial difficulties. No mention was made of the liquidated damages claim. Finally, Centerre made no attempt to pursue this claim until February of 1983.

■■ ■ Based on this evidence, we cannot say the trial court's con-

clusion that Centerre waived its claim to liquidated damages was against the manifest weight of the evidence. A claim for damages may be waived by conduct indicating an intent to regard the contract as still in force. (*Board of Education v. United States Fidelity Guaranty Co.* (1969), 115 Ill. App. 2d 416, 253 N.E.2d 663.) Continuing to make progress payments and the making of final payment is clearly indicative of such intent. (See *E. V. Cox Construction Co. v. Brookline Associates* (Okla. App. 1979), 604 P.2d 867, 871; *Royal Ornamental Iron, Inc. v. Devon Bank* (1975), 32 Ill. App. 3d 101, 336 N.E.2d 105.) Centerre's conduct demonstrates an intent to relinquish its right to liquidated damages and its conduct was inconsistent with an intention to enforce that right.

■ Finally, Centerre argues that even if it did waive its right to liquidated damages, it was only a *pro tanto* waiver and not a waiver *in toto*. Centerre maintains that its liquidated damage claim should only be waived to the extent of $50,000, the amount of the final payment. Section 9.9.4, however, states that final payment shall constitute a waiver of *all* claims, except for the enumerated exceptions. We find that this provision is a complete waiver of all claims, not just a waiver in the amount of the final payment. Further, we cannot conclude that Centerre's conduct evidenced an intent to relinquish only $50,000 of its claim. The making of progress payments after the January 1, 1981, deadline indicates Centerre's intent to waive liquidated damages. Each time Centerre made a progress payment, it further manifested its intent to treat the contract as still in force. The making of the progress payments after January 1, 1981, was just as inconsistent with enforcing Centerre's right to liquidated damages as was the making of final payment.

Continental raises several other defenses to Centerre's action. First, Centerre failed to perform strictly the payment terms of the construction contract, as required by the dual obligee rider to the performance bond. The rider specifically provides that neither the retainage nor final payment shall be released absent written consent of the surety, Continental. No such consent was obtained. Second, Continental maintains that Centerre cannot now claim damages which could have been avoided by prompt notice to the surety. Finally, Continental argues that it was released from liability on the bond as a result of a material alteration of the bonded construction contract. Specifically, Continental maintains that bonded construction contract refers to construction plans drawn up in 1977, but the project was actually built according to a different set of plans, prepared in 1980 and subsequent to the execution of the performance bond.

While these other defenses raised by Continental are meritorious, we need not address them as our holding on the issue of waiver is dispositive of this appeal.

The judgment of the circuit court of Jefferson County is affirmed.

Affirmed.

WELCH and LEWIS, JJ., concur.