THE ILLINOIS STATE TOLL HIGHWAY AUTHORITY, Plaintiff-Appellant and Cross-Appellee, v. GUST K. NEWBERG, INC., *et al.*, Defendants-Appellees and Cross-Appellants.

Second District   No. 2—88—0221

Opinion filed November 29, 1988.—Rehearing denied January 10, 1989.

Neil F. Hartigan, Attorney General, of Springfield, and Richard E. Friedman and Roland A. Eckert, both of Epton, Mullin & Druth, Ltd., of Chicago (Robert T. O'Donnell, of counsel), for appellant.

Louis A. Lehr, Jr., of Arnstein, Gluck, Lehr, Barron & Milligan, and Carey, Filter, White & Boland, both of Chicago (Edward M. White, of counsel), for appellees.

JUSTICE NASH delivered the opinion of the court:

Plaintiff, the Illinois State Toll Highway Authority (Authority), appeals from a summary judgment entered in favor of defendants, Gust K. Newberg, Inc. (Newberg), The Travelers Indemnity Co., and Fidelity & Deposit Company of Maryland, in an action in which the Authority sought liquidated damages for Newberg's alleged delay in performing a construction contract. The trial court found that the liquidated damages provision in the contract between the parties required the Authority to deduct any claimed liquidated damages from amounts due Newberg retained by the Authority; that the Authority's final payment of the retainage waived its claim for liquidated damages; and that a provision in the contract that payment does not oper-

ate as a waiver of the contract or of damages did not apply to liquidated damages. Newberg cross-appeals from an interlocutory order which denied its motion to amend its answer to plead additional reasons for delay which, it asserts, would have entitled Newberg to an extension of time under the contract, and also cross-appeals from an order granting the Authority's motion for partial summary judgment on the issue of whether the trial court's findings of fact and judgment under counts I and II of Newberg's complaint against the Authority, which were affirmed by this court in *Gust K. Newberg, Inc. v. Illinois State Toll Highway Authority* (1987), 153 Ill. App. 3d 918, 506 N.E.2d 658, are *res judicata* and resolve Newberg's present defense to the Authority's claim for liquidated damages.

Litigation continues to arise from a contract entered into between the Authority and Newberg-Krug-Brighton, a joint venture consisting of three corporations, for the construction of sections E-7AB and E-8AB of the East-West Tollway extension. The Newberg joint venture initially filed a two-count complaint against the Authority seeking $9 million in damages which it contended were caused by the Authority's delays in obtaining right-of-way parcels, in settling crop damage claims, and in obtaining relocation of utility crossings (hereinafter *Newberg I*). While that case was pending, the Authority's board of directors passed a resolution which purported to settle Newberg's claim against the Authority for $2.75 million. The Illinois Attorney General subsequently disapproved of the settlement, and Newberg then added a third count to its complaint alleging a breach of the settlement agreement. Ultimately, this court held that the Authority's settlement resolution was unenforceable because it did not have the approval of the Illinois Attorney General. (*Newberg-Krug-Brighton v. Illinois State Toll Highway Authority* (1978), 63 Ill. App. 3d 780, 380 N.E.2d 1029, *appeal after remand* (1982), 103 Ill. App. 3d 557, 431 N.E.2d 1375, *aff'd* (1983), 98 Ill. 2d 58, 456 N.E.2d 50).) After a bench trial on counts I and II of Newberg's amended complaint, the trial court entered judgment for the Authority which this court affirmed on appeal. (*Gust K. Newberg, Inc. v. Illinois State Toll Highway Authority* (1987), 153 Ill. App. 3d 918, 506 N.E.2d 658.) During the above proceedings, the Authority filed a second amended 15-count complaint against Newberg and its sureties, The Travelers Indemnity Co. and Fidelity & Deposit Co. of Maryland, which was severed from the above cause (hereinafter *Newberg II*). All counts of that complaint have been dismissed except those seeking the liquidated damages, which are the subject of the current appeal.

The Authority's claim for liquidated damages is based on New-

berg's delay in completing the road construction project. Under the contract, Newberg was to complete all of the grading, paving, shoulder placement, guard rail installation, structures, crossroad and other work to enable the road to be opened to traffic by October 1, 1972, but it was not completed and open until August 1974. The liquidated damage provision of the contract, "Standard Specification" (SS) 108.4, provides for liquidated damages based on a set schedule for each day of delay. It further provides that the Authority "shall" recover any liquidated damages by deducting the damages from amounts due or that become due to the contractor; if any deficiency remains, the contractor is required to remit the same; and that "[n]othing herein contained shall be construed as limiting the right of the Authority to recover from the Contractor any and all amounts due or to become due, and any and all costs and expenses sustained by the Authority for improper performance hereunder, repudiation of the Contract by the Contractor, failure to perform, or breach or breaches in any other respect including, but not limited to, defective workmanship or materials."

SS 105.14 of the contract allowed Newberg to request an extension of time by notifying the Authority, in writing, before commencing the anticipated delayed work, and all extension requests were to be considered by the Authority upon satisfactory completion of the contract. While the record does not contain a copy of SS 108.1, that provision of the contract apparently required the contractor to also submit a written application for an extension of time within 10 days after the delay ended. Newberg did notify the Authority, pursuant to SS 105.14, that it intended to seek an extension of time, but it never applied for an extension of time in accordance with SS 108.1.

The Authority notified Newberg in August 1975 that a final inspection had been made and that the work was complete and acceptable; it denied Newberg's requests for the time extensions in February 1978 and shortly thereafter filed its complaint for liquidated damages. The Authority's letter denying the extension requests stated that the requests were being denied because the delays encountered were the contractor's fault but did not mention Newberg's failure to comply with the written application requirement under SS 108.1. While the Authority's letter contains a specific reference to section E-7AB of the project, and does not mention section E-8AB, the Authority does not dispute Newberg's assertion that the letter was intended as a denial of Newberg's extension requests for both sections. The Authority stated in its annual report that "the project was delayed by a 100-year rainfall. Contractors lost more than half of

the 427 calendar days available for construction work from September, 1971 to October, 1972." In another of its annual reports, the Authority stated that "[m]uch of the area became unworkable after periods of rain due to saturated soil conditions. Beginning in late July, 1973, and continuing into September, shortages of *** cement delayed construction. For a time, cement was not available at all."

Throughout the project, the Authority retained 10% of amounts due Newberg which was to be made as a final payment after completion and acceptance of the work. SS 109.7 of the contract provided that acceptance of final payment by the contractor released and waived any claims the contractor may have against the Authority. At a meeting with the Authority, Newberg requested that the Authority pay the retainage without requiring it to release its claim against the Authority. In February 1975, Assistant Attorney General Lavery wrote to the attorneys for Newberg summarizing their prior meeting and, subsequently, the Authority's board of directors approved a modification to SS 109.7 which would allow the contractors to accept final payment without releasing their claims as long as suit was filed on any claim within 60 days of such payment. In September 1975, final payment in the amount of $2,445,909 was made to Newberg. While twice the amount of crop and drainage damage claims by Newberg were deducted from the retainage and put into escrow, no amounts were withheld by the Authority for the payment of liquidated damages.

The following provisions in the contract are also pertinent to the Authority's appeal. SS 108.11, entitled "TERMINATION OF CONTRACTOR'S RESPONSIBILITY," states that when the work is accepted by the Authority in writing, the contract shall be deemed to be complete and that the contractor is released from "all further obligations and requirements except as set forth in his bond and provided for in Responsibility for Damage Claims, 107.18; No Waiver of Legal Claims, 107.19; and Guaranty Against Defective Work, 109.9." "NO WAIVER OF LEGAL CLAIMS," SS 107.19, provides:

"The Authority shall not be precluded or stopped [sic] by any measurement, estimate, or certificate made either before or after the completion and acceptance of The Work and payment therefor from showing the true amount and character of The Work performed and materials furnished by the Contractor, or from showing that any such measurement, estimate or certificate is untrue or incorrectly made, or that The Work or materials do not conform in fact to the Contract. The Authority shall not be precluded or estopped, notwithstanding any such mea-

surement, estimate, or certificate and payment in accordance therewith, from recovering from the Contractor and his sureties such damages as it may sustain by reason of his failure to comply with the terms of the Contract. *Neither the acceptance by the Authority or any representative of the Authority, nor any payment for or acceptance of the whole or any part of The Work, nor any extension of time, nor any possession taken by the Authority, shall operate as a waiver of any portion of the Contract, or of any power herein reserved, or any right to damages herein provided,* or as a release of the contractor, or his surety or sureties. A waiver of any breach of the Contract shall not be held to be a waiver of any other or subsequent breach. (Emphasis added.)

SS 107.16, "CONTRACTOR'S RESPONSIBILITY FOR WORK," holds the contractor responsible for damage or injury to the work or materials prior to final acceptance of the work by the Authority.

The trial judge granted Newberg's motion for summary judgment, stating in his letter of opinion that the language in SS 108.4 that the Authority "shall" recover liquidated damages from amounts due the contractor was mandatory, not permissive, and that the Authority waived its claim for liquidated damages by making final payment without deducting such damages. The court also determined that the terms of SS 108.11 released Newberg from all further responsibility, including liquidated damages for delay, and that the exception provided therein for legal claims only applied to matters involving weights, measurements, and certificates of completion. The Authority appeals from the summary judgment.

Newberg then cross-appeals from the trial court's orders which had denied its motion to amend its answer and granting the Authority's motion for partial summary judgment. Newberg's answer to the Authority's complaint asserted that "the reasons for the delay are set forth in its Complaint," which alleged that delays were caused by the Authority in obtaining right-of-way parcels, in settling crop damage claims, and in obtaining relocation of utility crossings. (See *Gust K. Newberg, Inc. v. Illinois State Toll Highway Authority* (1987), 153 Ill. App. 3d 918, 506 N.E.2d 658.) That complaint also alleged that, as a result of the claimed Authority's delays, Newberg had to remain on the job for a longer period of time, causing it damage. After the trial judge held against Newberg in that case on its complaint, and his decision was affirmed by this court on appeal, the Authority moved for a summary determination in this case that Newberg's asserted causes of delay were not defenses, as a matter of law, because the trial court

had found that the Authority did not breach its contract with Newberg. Newberg thereupon sought leave to amend its answer to assert as defenses "[a]n act of God, rainfall of extraordinary and beyond normal intensity for the locality *** during the year 1972" and an unforeseen, nationwide cement shortage during 1973. SS 108.1 provided that the Authority could extend the time for performance, as it deemed equitable, for delays which occur "due to unforeseen causes beyond the control and without the fault or negligence of the Contractor, including, but not restricted to, acts of God, *** floods, *** extraordinary delays in delivery of materials caused by strikes, lockouts, wrecks, freight embargoes, governmental acts, or acts of God." An act of God included floods, but not rain of normal intensity.

The trial court denied Newberg's motion to amend its answer and granted the Authority's motion for summary determination of the major issues. In his letter of opinion, the judge stated that his findings of fact and decision in *Newberg I* were *res judicata* of Newberg's rain and cement shortage defenses in *Newberg II*. In *Newberg I*, Newberg had contended that, but for the Authority's delays, the road construction project would have been timely completed. Newberg there argued that the Authority's delays caused a "ripple effect," that is, the extraordinary rainfall and cement shortage would not have caused Newberg damage had the Authority not delayed Newberg's performance. In *Newberg I*, the trial court had identified numerous factors which had delayed the construction, including wet weather in the spring and summer of 1972 and a cement shortage in 1973. While the court concluded in that case that the Authority had caused Newberg some delay and that Newberg had suffered damages as a result of those delays, the court found no breach of contract by the Authority because the contract exculpated the Authority for any damages the contractor suffered as a result of the Authority's delay in securing necessary rights-of-way, and made the contractor responsible for knowing the status of right-of-way acquisitions by the Authority at the time the contractor submitted its bid. (*Gust K. Newberg, Inc. v. Illinois State Toll Highway Authority* (1987), 153 Ill. App. 3d 918, 925-27, 506 N.E.2d 658.) In concluding that *res judicata* barred assertion of Newberg's rain and cement shortage defenses, the trial judge stated that "[a]lthough I previously stated that Newberg was delayed by some of ISTHA's conduct ***, I held in *Newberg v. ISTHA* that those were not compensable because of the contract provisions which exculpated ISTHA for the very claims that Newberg made. Those findings and decision by the court are *res judicata* in this case." The trial judge also stated that, although Newberg put the Authority on notice of ex-

cessive rainfall and the cement shortage, it could not rely on these defenses because Newberg never applied for an extension of time to perform as required by SS 108.1. In his letter of opinion upon motion for reconsideration, the trial judge also noted Newberg's argument that the Authority had waived the requirement of a written application for an extension of time by acknowledging Newberg's letters setting forth its intention to apply for an extension of time, by paying out the retainage, and by ruling on the merits of its claim that it was entitled to an extension when the Authority denied Newberg an extension in February 1978, but the court did not decide this issue. The judge noted that Newberg's extraordinary rainfall defense did not appear to fall within SS 108.1's enumerated nonfault delaying causes justifying an extension, and that its cement shortage defense could not be asserted because, even assuming an extension of time was warranted because of rainfall, "it would not have carried the time for performance over into a period within which the cement shortage would have occured [sic]."

■■ ■ The Authority contends first that SS 108.4 does not limit its right to collect liquidated damages from amounts retained from the progress payments. We agree. Newberg responds that the use of the word "shall" in that section mandates that the Authority withhold from its final payment of the retainage any amounts it is claiming as liquidated damages. While the use of the word "shall" generally denotes mandatory and not permissive language (*DeGarmo v. Aldeco, Inc.* (1973), 13 Ill. App. 3d 403, 405, 300 N.E.2d 270), a contract should not be interpreted by reference to particular words or isolated phrases, but by viewing each part in light of others. (*Arthur Rubloff & Co. v. Comco Corp.* (1978), 63 Ill. App. 3d 362, 368, 380 N.E.2d 15.) While parties to a contract may limit their rights, duties and obligations by express agreement, the contract must clearly show that the stipulated remedy is the sole or exclusive remedy. (*Structural Sales, Inc. v. Vavrus* (1985), 132 Ill. App. 3d 718, 720, 477 N.E.2d 745.) Here, SS 108.4 provides that nothing contained therein limits the Authority's right to recover any amount due or any cost or expense sustained by the Authority because of a contract breach, *in any respect.* This language establishes that the provision in SS 108.4 that "[t]he Authority shall recover said liquidated damages by deducting the amount thereof out of any monies due or that may become due" was not intended to restrict or limit the Authority's collection of liquidated damages solely to the retainage. The language upon which Newberg relies does not provide that the Authority *must* deduct liquidated damages from the retainage, but only that the Authority *can* deduct

such damages from any amounts due or that become due the contractor. We also recognize the potential conflict between SS 108.4 and SS 105.14, but conclude that the two sections can be harmonized. While SS 105.14 does state that extension requests will be considered by the Authority upon satisfactory completion of the contract, it does not preclude the Authority from disposing of extension requests during the contract's performance.

■■ The Authority next contends that the trial court erred in finding that acceptance of and payment for the work under SS 108.11 "releases the contractor for actual and liquidated delay damages." That section releases the contractor from further obligation when the Authority accepts the contractor's work in writing, and also sets forth three exceptions. Pertinent to this appeal is the exception relating to the waiver of legal claims contained in SS 107.19. The trial court considered that SS 107.19 only pertained to claims dealing with weights, measurements, and certificates of completion. We do not agree, as that section states that neither acceptance nor payment for any part *or all of the work* operates as a waiver of the contract or any right to damages. This provision contains no language limiting its application to matters dealing with weights, measurements, or certificates. Our conclusion is supported by the language in SS 108.4 which permits the Authority to deduct liquidated damages from amounts due Newberg, but also states that nothing in that section limits the Authority's right to recover any amount due or any cost or expense sustained for improper performance of the contract or its breach in any respect. Newberg argues that this interpretation will render SS 108.11 a nullity because the exception thereunder dealing with waiver of legal claims will then encompass every obligation under the contract. We disagree and note that Newberg's obligation under SS 107.16, "CONTRACTOR'S RESPONSIBILITY FOR WORK," to protect the work and materials from damage or injury prior to final acceptance by the Authority is relieved under SS 108.11, "TERMINATION OF CONTRACTOR'S RESPONSIBILITY," upon final acceptance.

■■ ■ Newberg also argues that the Authority waived its claim for liquidated damages when it paid the retainage without deducting liquidated damages, citing *Centerre Trust Co. v. Continental Insurance Co.* (1988), 167 Ill. App. 3d 376, 521 N.E.2d 219. In that case, the contract contained the following provision:

" 'The making of final payment shall constitute a waiver of all claims by the Owner except those arising from:
.1 unsettled liens,

.2 faulty or defective work appearing after substantial completion,

.3 failure of the work to comply with the requirements of the Contract Documents, or

.4 terms of any special warranties required by the Contract Documents.' '' (167 Ill. App. 3d at 379.)

The court held that, in view of the above-quoted provision, final payment waived liquidated damages. The court noted that implicit in the rule that final payment on a construction contract does not waive claims arising from latent defects is that final payment does waive all known claims. (167 Ill. App. 3d at 381.) In contrast, the contract here contained a provision, SS 107.19, which expressly provided that payment would not constitute a waiver of claims. Newberg argues that a similar nonwaiver clause existed in *Centerre Trust Co.*, but we disagree. In that case, there was a contract provision which stated that "[n]o action or failure to act by the Owner *** shall constitute a waiver of any right or duty afforded *** under the Contract, nor shall any such action or failure to act constitute an approval of or acquiescence in any breach thereunder, except as may be specifically agreed in writing." (167 Ill. App. 3d at 379-80.) The distinction, we conclude, is that here there was an express nonwaiver clause respecting claims for damages, and in *Centerre Trust Co.*, there was a provision expressly waiving liquidated damages upon final payment.

■ Newberg also argues that the Authority effected a common law waiver of its claim to liquidated damages when it paid the retainage without deducting liquidated damages. This assertion ignores the express nonwaiver provisions of the contract, and we need not consider it further.

■ Because we conclude that final payment of the retainage does not mandate a finding of waiver based on the express terms of the contract, we also need not consider the Authority's arguments that waiver of liquidated damages violates public policy based on the facts of this case, and that disputed questions of fact preclude an award of summary judgment.

■ Newberg contends in its cross-appeal that its rain and cement shortage defenses are not barred by *res judicata*, and we agree. Apparently, the trial court concluded that Newberg could not assert these defenses because its theory for recovery of damages in *Newberg I* was that, because the Authority delayed, ripple effect damages due to rainfall and cement shortages resulted, and since it was determined in *Newberg I* that the Authority did not breach the contract, these defenses could not be maintained. While the trial court and this court

there concluded that the Authority did not breach its contract, the basis for that decision was not that the Authority caused no delay, but that any delay by the Authority was not compensable because of an exculpatory provision in the contract. (*Gust K. Newberg, Inc. v. Illinois State Toll Highway Authority* (1987), 153 Ill. App. 3d 918, 926-28, 506 N.E.2d 658.) Furthermore, we note the trial court's findings in *Newberg I* that rainfall and a cement shortage were factors which caused delay. We conclude that *res judicata* does not bar Newberg from asserting these defenses and it will be permitted on remand to so amend its answer.

◼ Newberg next contends, as it did in the trial court, that the Authority waived the written application requirement under SS 108.1 by responding to the merits of Newberg's claim that it was entitled to extensions because of rainfall and a cement shortage. The trial court did not rule on this issue because it concluded that extraordinary rainfall was not the type of nonfault delaying cause which would justify an extension. However, SS 108.1 contains a list of factors which would justify an extension of the time for performance, including an act of God, floods, and extraordinary delays in delivery of materials. It also provides that rain of normal intensity will not be construed as an act of God. Newberg asserted in its amended answer that it was delayed as a result of extraordinary rainfall, and not rain of normal intensity, an allegation which we find could justify an extension of time under SS 108.1. The trial court's further comment that the claimed cement shortage would not be grounds for an extension of time because, even if an extension was granted for rainfall, Newberg's time for performance would not have extended into the period in which a cement shortage occurred, is a conclusion which is not supported by the record. We do consider that the Authority waived the written application requirement under SS 108.1. Two and one-half years after the Authority notified Newberg that final inspection had been made and that the work was complete and acceptable, it notified Newberg that it was denying its extension requests because the Authority had determined that all delays were Newberg's fault. As no mention was made of Newberg's failure to comply with SS 108.1, the Authority waived the written application requirement under that section. *Cf. Walsh v. North American Cold Storage Co.* (1913), 260 Ill. 322, 328-29, 103 N.E. 185 (while damages resulting from delays which were the contractor's fault are not waived, a contract provision requiring the contractor to apply for, in writing, and secure an extension of time to perform was waived when the owners, having knowledge of the factors causing delay, did not insist on strict compliance

18

with the time of performance under the contract).

Accordingly, the judgment of the circuit court as to both the appeal and cross-appeal is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

DUNN and WOODWARD, JJ., concur.