**COUNTY OF DAUPHIN, PENNSYLVANIA, Plaintiff,**

v.

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Defendant.**

**Civ. A. No. 1:CV–89–0573.**

United States District Court, M.D. Pennsylvania.

Jan. 16, 1991.

Richard H. Wix, Wix Wenger Weidner & Gunnison, Harrisburg, Pa., for plaintiff.

John Havas, Foulkrod, Reynolds & Havas, Harrisburg, Pa., for defendant.

## MEMORANDUM

RAMBO, District Judge.

This case is before the court on the motion of defendant, Fidelity and Deposit Company of Maryland ("Fidelity"), for summary judgment, partial summary judgment, judgment on the pleadings or partial

judgment on the pleadings, and for the sanctions of dismissal or evidentiary preclusion. Plaintiff, County of Dauphin ("the County"), instituted this action against Fidelity in the Dauphin County Court of Common Pleas, on March 31, 1989. Fidelity removed the action to this court on April 19, 1989, on the basis of diversity of citizenship. The parties have had ample time for discovery, this court having granted two extensions of the discovery deadlines, which allowed the parties a total of sixteen (16) months within which to conduct discovery. Fidelity filed the present motion on October 15, 1990, with supporting documents. The parties have briefed the motion and it is now ripe for the court's decision.

## FACTUAL BACKGROUND

The undisputed facts pertinent to this motion are as follows. In February, 1984, the County entered into a contract with a prison equipment contractor, Harry C. Partridge, Jr. & Sons, Inc. ("Partridge"), for the supply and installation of security equipment to a project for new construction and renovation of the Dauphin County Prison. The Partridge contract was one of five prime contracts awarded by the County for work related to the prison project. The other four prime contracts were for general construction, electrical work, plumbing, and heating, ventilation and air conditioning.

As surety for Partridge, Fidelity issued a performance bond that named Partridge as its principal and the County as its obligee. In September, 1984, before it completed its obligations under the contract, Partridge filed for Chapter 11 bankruptcy protection and, subsequently, was found to have rejected the contract with the County. Thereafter, Fidelity, with the agreement of the County, arranged for Roanoke Iron and Bridgework Company ("Roanoke") to complete Partridge's contractual obligations. Due to Roanoke's difficulty in obtaining the required performance bond, the County and Roanoke did not enter into a new contract. Instead, Fidelity and the County agreed that Fidelity would stand behind Roanoke as the completing contractor under the Partridge contract and Fidelity reinstituted its performance bond. Insofar as they are relevant to this motion, Roanoke's obligations under the contract were the same as those of Partridge.

The contract documents were provided by the County. The contractual provisions relevant to this dispute concern the times for commencement and completion of the contractual work (Article 3, Contract and Paragraph 9, Supplemental General Conditions); liquidated damages (Article 3, Contract, and Paragraph 9, Supplemental General Conditions); final payment (Paragraph 9, General Conditions); and mutual responsibility (Paragraph 6, General Conditions).

In accordance with the time for completion of the work set forth in the contract and the notice to proceed issued by the County on February 10, 1984, Roanoke's contractual completion date was May 25, 1985. The overall project completion date set by the County was also May 25, 1985. However, it is undisputed that Roanoke did not substantially complete the work on the project until January, 1986. The County issued Roanoke a certificate of substantial completion effective January 24, 1986, which certified that Roanoke's work under the contract was sufficiently complete to allow the County to occupy or utilize the work as provided for in the contract. An occupancy permit was issued for that portion of the project that constituted new construction on July 27, 1986. By letter dated October 21, 1987, the County's architect recommended that final payment be made to Roanoke, which payment the County executed by check, dated December 3, 1987.

The County, as noted, instituted this action against Fidelity on March 31, 1989. The County alleges, and Fidelity does not deny, that there was a 244-day delay beyond the 465 days allowed in the contract for completion of Roanoke's work. The delay is measured as the time between the issuance to Partridge of the Notice to Proceed and the issuance to Roanoke of the Certificate of Substantial Completion. The County claims Roanoke's delay engendered delay to the overall completion of the

project, which caused the County to incur damages totalling $1,182,686.91, mostly in the form of administrative payments to the other contractors on the prison project. While Fidelity agrees that Roanoke's work was not performed on time, it denies that Roanoke's delay caused the overall delay in the project, or the expenses the County claims as damages.

Fidelity provided this court with documents indicating that at various stages of the project, the County encountered timeliness and other problems with other prime contractors on the project. Those documents, Fidelity argues, demonstrate that the responsibility for the overall delay in the project cannot be attributed to Roanoke. Fidelity argues, further, that even if Roanoke's delay period caused some damages, under Paragraph 9 of the General Conditions to the contract, the County waived its right to damages by making final payment. In the alternative, Fidelity argues that the County is limited to liquidated damages of $100.00 per day for the 244 days of Roanoke's delay, as provided for in Article 3 of the contract, and Paragraph 9 of the Supplemental General Conditions.

## DISCUSSION

Fidelity's motion requests summary judgment or judgment on the pleadings. Since the parties relied upon, and the court has considered, matters that are outside of the pleadings, the motion will be treated as one for summary judgment. Fed.R.Civ.P. 12(c); *Nottingham v. Peoria*, 709 F.Supp. 542, 545 (M.D.Pa.1988).

Rule 56(c) of the Federal Rules of Civil Procedure requires the entry of summary judgment

> after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving par-

ty's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party seeking summary judgment satisfies his burden under Rule 56 by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*, 477 U.S. at 325, 106 S.Ct. at 2554. The nonmoving party has the burden of demonstrating to the court that there exists a genuine issue of material fact by reference to affidavits, or depositions, answers to interrogatories, admissions on file or similar evidentiary materials. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Rule 56(e) provides that such affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. The nonmoving party may not rely on the pleadings to satisfy his burden but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). As the Supreme Court recently stated in *Lujan v. National Wildlife Fed'n*, —— U.S. ——, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990), "[T]he object of [requiring a party adverse to a summary judgment motion to go beyond the pleadings] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.... Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues."; *see also, Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir.1990). The substantive law defines which facts are material and only those disputes over facts that may affect the outcome of the suit under the substantive law will preclude the entry of summary judgment. *Id.*, 477 U.S. at 248, 106 S.Ct. at 2510.

Thus, it is this court's responsibility to determine whether the County has demonstrated that there exists a genuine and material issue of fact. In making the decision "[t]he evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). With these standards in mind the court will review the substantive law and the parties' submissions to determine a material issue of fact exists that should preclude the entry of summary judgment.

■ Although the County has partially characterized its claim as one in negligence, the court notes that this is a contract dispute. As such, the court's first task in reviewing this motion must be to examine the language of the contract itself. Under Pennsylvania law, the interpretation of a contract requires an initial determination by the court of whether the contract language is ambiguous, or clear and unambiguous. *Polish Amer. Machinery Corp. v. R.D. & D. Corp.,* 760 F.2d 507, 512 (3d Cir.1985). If the language is ambiguous, the court must turn the interpretation of the contract over to the jury. If the language is clear, however, the court must interpret the agreement. *Id.* Contractual language is ambiguous when it is "reasonably susceptible of different construction, is obscure in meaning through indefiniteness of expression or has a double meaning." *Commonwealth, Dept. of Trans. v. Mosites Constr. Co.,* 90 Pa.Commw. 33, 36, 494 A.2d 41, 43 (1985). A contract is not ambiguous by the mere fact that the parties disagree on the proper interpretation to be given the language. *Commonwealth State Highway & Br. Auth. v. E.J. Albrecht Co.,* 59 Pa.Commw. 246, 251, 430 A.2d 328, 330 (1981).

■ We are mindful of the fact that Pennsylvania courts apply the "plain meaning" rule of interpretation of contracts, an approach to contract interpretation that assumes that "the intent of the parties to a written contract is ... embodied in the writing itself, and when the words are

clear and unambiguous the intent is to be discovered only from the express language of the agreement." *Steuart v. McChesney,* 498 Pa. 45, 48–49, 444 A.2d 659 (1982). This approach is found to "enhance the extent to which contracts may be relied upon by contributing to the security of belief that the final expression of *consensus ad idem* will not later be construed to import a meaning other than that clearly expressed." *Id.* at 52, 444 A.2d at 663.

In the instant case, the court must determine whether either the final payment or liquidated damages provisions in the contract documents is ambiguous. The contract provides, in pertinent part, the following:

TIME OF COMMENCEMENT AND SUBSTANTIAL COMPLETION

The Work to be performed under this Contract shall be commenced within Five (5) days after the receipt of written Notice to Proceed and subject to authorized adjustments, Substantial Completion shall be achieved not later than Four Hundred Sixty–Five (465) consecutive calendar days after issuance of the Notice to Proceed.

The contractor further agrees to pay liquidated damages, the sum of One Hundred Dollars ($100), for each consecutive calendar day thereafter as provided in Paragraph 9.10 of the Supplementary General Conditions.

Article 3, Contract (Standard Form of Agreement Between Owner and Contractor.

9.10 TIME FOR COMPLETION AND LIQUIDATED DAMAGES

9.10.1 It is hereby understood and mutually agreed by and between the contractor and owner, that the date of beginning and the time for completion as specified in the contract of work to be done hereunder are ESSENTIAL CONDITIONS of this contract, and it is further mutually understood and agreed that the work embraced in this contract shall be commenced on a date to be specified in the Notice to Proceed.

9.10.2 The contractor agrees that said work shall be prosecuted regularly, dili-

gently, and uninterruptedly at such rate of progress as will ensure full completion thereof within the time specified....

9.10.3 If the said contractor shall neglect, fail, or refuse to complete the work within the time herein specified, or any proper extension thereof granted by the owner, then the contractor does hereby agree, as a part consideration for the awarding of this contract, to pay to the owner the amount specified in the contract, not as a penalty but as liquidated damages for such breach of contract as hereinafter set forth, for each and every calendar day that the contractor shall be in default after the time stipulated in the contract for completing the work.

9.10.4 The said amount is fixed and agreed upon by and between the contractor and the owner because of the impracticability and extreme difficulty of fixing and ascertaining the actual damages the owner would in such event sustain, and said amount is agreed to be the amount of damage which the owner would sustain and said amount shall be retained from time to time by the owner, from current periodical estimates.

9.10.5 It is further agreed that time is of the essence of each and every portion of this contract.... Provided that the contract shall not be charged with liquidated damages or any excess cost when the owner determines that the contractor is without fault and the contractor's reasons for the time extension are acceptable to the owner: Provided further, that the contractor shall not be charged with liquidated damages or any excess cost when the delay in completion of the work is due:

.1 To any preference, priority, or allocation order duly issued by the government;

.2 To unforeseeable cause beyond the control and without fault or negligence of the contractor, including but not restricted to, acts of God, or of the public enemy, acts of the owner, acts of another contractor in the performance with the owner, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and sever weather; and

.3 To any delays of subcontractors or suppliers occasioned by any of the causes specified above; Provided further, that the contractor shall, within 30 days from the beginning of such delay, unless the owner shall grant a further period of time prior to the date of final settlement of the contract, notify the owner, in writing, of the cause of delay, who shall ascertain the facts and extent of the delay and notify the contractor within a reasonable time of its decision in the matter.

9.10.6 In the event these provisions as to liquidated damages are determined by a court having jurisdiction to be invalid or unenforceable, the owner shall have the right to seek and obtain consequential compensatory or like damages for delay in completion.

9.10.7 The provisions as to liquidated damages as stated above shall in no way limit the owner's right to recover damages under the provisions of Article 6 of the General Conditions of the Contract for Construction.

Paragraph 9, Supplemental General Conditions to Contract.

## ARTICLE 6

### WORK BY OWNER OR BY SEPARATE CONTRACTORS

#### 6.2 MUTUAL RESPONSIBILITY

6.2.1 The Contractor shall afford the Owner and separate contractors reasonable opportunity for the introduction and storage of their materials and equipment and the execution of their work and shall connect and coordinate his Work with theirs as required by the Contract Documents.

6.2.2 If any part of the Contractor's Work depends for proper execution or result upon the work of the Owner or any separate contractor, the Contractor shall, prior to proceeding with the Work, promptly report to the Architect any apparent discrepancies or defects in such other work that render it unsuitable for

such proper execution and results. Failure of the Contractor so to report shall constitute an acceptance of the Owner's or separate contractor's work as fit and proper to receive his Work, except as to defects which may subsequently become apparent in such work by others.

6.2.3 Any costs caused by defective or ill-timed work shall be borne by the party responsible therefor.

Paragraph 6, General Conditions to the Contract.

### FINAL PAYMENT

9.9.4 The making of a final payment shall constitute a waiver of all claims by the Owner except those arising from:

.1 Unsettled liens,

.2 Faulty or defective work appearing after Substantial Completion,

.3 Failure of the work to comply with the requirements of the Contract Documents, or

.4 The terms of any special warranties required by the Contract Documents.

Paragraph 9, General Conditions to the Contract.

It is Fidelity's position that the final payment provision plainly precludes the County's recovery in this action. When the County issued the check for final payment to Roanoke, pursuant to the County's architect's express recommendation, Fidelity argues, the County waived the claim for damages asserted in this action because delay damages do not fit into one of the four categories excluded from the waiver of claims in this final payment provision. The County urges, however, that its claim for damages falls within two of the exceptions quoted above. Roanoke's delay in completion, the County argues, is a "failure of the work to comply with the requirements of the contract documents," under Paragraph 9.9.4.3. In addition, the County urges that Fidelity's performance bond is a "special warranty" under Paragraph 9.9.4.4. The court is not persuaded by either of the County's arguments.

■ The court finds that Article 3 of the contract and Paragraph 9 of the Supplemental General Conditions plainly establish that damages for delay would be provided for through liquidated damages of $100.00 per day. Further, Paragraph 9.9.4 clearly precludes claims for damages after final payment has been made in any situation other than the four exceptions provided therein. The plaintiff has produced no evidence of a later intent by the parties to deviate from this waiver provision.

■ Moreover, the County's characterization of the delay in completion of the work as a "failure to comply with the requirements of the contract documents" is inconsistent with the provisions of the contract documents when viewed in their entirety. The intent of the parties to an agreement must be determined by examining the contract documents as a whole, and the court must give effect to all the contractual provisions, and should not allow one provision to annul another. *Common., Dep't of Transp. v. Manor Mines, Inc.*, 523 Pa. 112, 565 A.2d 428 (1990). Here, Paragraph 9.9.4.3 refers to failure of the *work* to comply with the requirements of the contract documents. As Fidelity pointed out, "work" is defined in Paragraph 1.1.3 of the General Conditions as follows:

The Work comprises the completed construction required by the Contract Documents and includes all labor necessary to produce such construction, and all materials and equipment incorporated or to be incorporated in such construction.

Thus, the reference in Paragraph 9.9.4.3 to "work" refers to materials and workmanship and supports the Owner's right to claims for noncompliance with contract documents discovered after final payment is made. Damages for delay in completing performance, on the other hand, are treated separately and specifically under the liquidated damages provisions, with specific reference to the difficulty in ascertaining the costs that would be incurred as a result of delay.

It is significant that, unlike defects or noncompliance in the materials and work-

manship, which may be obscured and which may only be discovered after the passage of time, any delay in the completion of the work is immediately apparent. The court will not broaden Paragraph 9.9.4.3 so as to nullify the specific provisions set forth regarding damages for delay and the effect of final payment. The court finds that delay in completing the work is not the type of noncompliance excepted from the waiver provided for in Paragraph 9.9.4. *Compare Centerre Trust Co. of St. Louis v. Continental Insur. Co.*, 167 Ill.App.3d 376, 118 Ill.Dec. 151, 154, 521 N.E.2d 219, 222 (1988); *with Illinois State Toll Highway Auth. v. Newberg*, 177 Ill.App.3d 6, 126 Ill.Dec. 355, 361, 531 N.E.2d 982, 988 (1989) *and Exchange National Bank of Chicago v. United States Fid. & Guar. Co.*, No. 81 C 7119, 1985 WL 1854 (N.D.Ill, June 19, 1985).

█ Similarly, the court rejects the County's argument that the performance bond issued by Fidelity is a "special warranty" under Paragraph 9.9.4.4. The performance bond only obligates Fidelity to insure that the work is done *according to the provisions of the contract*. The parties agree that the performance bond confers upon Fidelity all the rights and obligations of its principal under the contract. Thus, when the principal is released from the threat of future claims under the contract, so must the surety be released. Absent express provisions in the performance bond or the contract to the contrary, the role of the surety is inconsistent with a construction of the performance bond as a "special warranty" that subjects Fidelity to claims related to performance of the work for which the principal of the contract cannot be held subject.

In sum, the court finds that when the County made final payment, it waived its right to any damages it may have incurred as a result of Partridge or Roanoke's delay in completing the project. Fidelity is entitled, therefore, to summary judgment on the claims.

Having made this determination, Fidelity's other arguments need not be addressed. The court will note briefly, however, that it agrees with Fidelity that, if the County were entitled to any damages at all in this action, it would be limited by the liquidated damages provisions in the contract. The County argues that the liquidated damages provisions in the contract were not exclusive. In support of that argument, the County points to the "mutual responsibility" provisions in Paragraph 6 of the General Conditions, specifically Paragraph 6.2.3, which provides that "costs caused by defective or ill-timed work shall be borne by the party responsible therefor."

As noted previously, proper contract interpretation requires the court to read the contract documents as an entirety and to avoid giving an interpretation to a provision that will nullify the clear and unambiguous language of another provision. Paragraph 6 deals with, among other issues, the mutual responsibility of cooperation between contractors and the Owner. Paragraph 6.2.3 reinforces the language found in other parts of the Contract documents, which subject the contractor to liability for damages suffered by the owner for delay, defects, damage to the equipment of others, and similar matters. The three lines of Paragraph 6.2.3 do not nullify the express and lengthy provisions found elsewhere in the contract documents setting forth the calculation of damages to the owner for the contractor's delay in completing the project. An appropriate order will be issued.

### ORDER

In accordance with the accompanying memorandum, IT IS HEREBY ORDERED THAT:

1) The motion for summary judgment of defendant Fidelity And Deposit Company Of Maryland is granted; and

2) The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff and to close the file.