

1999 Decisions

10-5-1999

# Pacitti v Macy's

Precedential or Non-Precedential:

Docket 98-1803

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Pacitti v Macy's" (1999). *1999 Decisions.* Paper 276.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/276

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed October 5, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-1803

JOANNA PACITTI, a minor, by JOSEPH PACITTI, and
STELLA PACITTI, her parents and guardians,
      Appellants

v.

MACY'S; MACY'S EAST, INC.

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 97-cv-02557)
(District Judge: Honorable James T. Giles)

Argued: July 15, 1999

Before: GREENBERG, ALITO, Circuit Judges, and
STAFFORD, District Judge*

(Opinion Filed: October 5, 1999)

_____

* The Honorable William H. Stafford, Jr., United States District Judge for
the Northern District of Florida, sitting by designation.

ALFRED W. PUTNAM, JR. (argued)
Drinker, Biddle & Reath
1345 Chestnut Street
Philadelphia National Bank Building
Philadelphia, PA 19107-3496

ALBERT C. OEHRLE
One East Airy Street
P.O. Box 657
Norristown, PA 19404

JOSEPH F. CLAFFY
Joseph F. Claffy & Associates, PC
100 S. High Street
West Chester, PA 19382

Counsel for Appellants

ROBERT P. JOY (argued)
DIANE M. SAUNDERS
Morgan, Brown & Joy, LLP
One Boston Place, Suite 1616
Boston, MA 02108-4472

JAMES M. PENNY, JR.
Obermayer Rebmann Maxwell
 & Hippel LLP
One Penn Center – 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895

Counsel for Appellees

OPINION OF THE COURT

ALITO, Circuit Judge:

Stella and Joseph Pacitti, on behalf of their daughter, Joanna Pacitti ("plaintiffs"), appeal the District Court's grant of summary judgment in favor of Macy's East, Inc. ("Macy's") on their state-law contract and tort claims arising from Macy's role as promoter and host of "Macy's Search for Broadway's New `Annie' " (the "Search"). Plaintiffs also appeal the District Court's order limiting the scope of

discovery. For the reasons that follow, we reverse on both grounds and remand for further proceedings.

I.

In May 1996, the producers of "Annie," the Classic Annie Production Limited Partnership (the "producers"), and Macy's, a retail department store chain, entered into an agreement under which Macy's agreed to sponsor the "Annie 20th Anniversary Talent Search." See App. at 129a–32a. Specifically, Macy's agreed to promote the event and to host the auditions at its stores in the following locations: New York City, Boston, Atlanta, Miami, and King of Prussia, Pennsylvania. See id. at 129a–30a. The producers agreed to select one finalist from each regional store to compete in a final audition at Macy's Herald Square store in New York City. See id. at 130a. The producers also agreed to offer the winner of the final audition "a contract for that role to appear in the 20th Anniversary Production of Annie .. ., subject to good faith negotiations and in accordance with standard Actors' Equity Production Contract guidelines" (the "standard actors' equity contract"). 1 Id.

Macy's publicized the Search in newspapers and in its stores in the five regional locations. All of the promotional materials referred to the event as "Macy's Search for Broadway's New `Annie.' " See id. at 59a–83a. Plaintiffs learned of the Search from an advertisement in the Philadelphia Inquirer that stated, in pertinent part:

> If you are a girl between 7 and 12 years old and 4 È6<!DAG> or under, the starring role in this 20th Anniversary Broadway production and national tour could be yours! Just get your hands on an application . . . and bring it to the audition at Macy's King of Prussia store. . . . Annie's director/lyricist . . . will pick the lucky actress

_____

1. The Actors' Equity Association requires producers to attach its standard "Agreement and Rules Governing Employment under the Production Contract" to "all contracts where production is bonded as a Bus and Truck Tour." See App. at 141a. As we discuss below, that contract provides, among other things, that the producer retains the authority to replace the actor at any time so long as the actor is compensated through the term of the contract. See id. at 168a.

3

for final callbacks . . . at Macy's Herald Square. Annie goes on the road this fall and opens on Broadway Spring 1997.

Id. at 208a.

In June 1996, Joanna, then 11-years old, and her mother picked up an application at the King of Prussia store. The application form announced:

Annie, America's most beloved musical[,] and Macy's, the world's largest store, are conducting a talent search for a new "Annie" to star in the 20th Anniversary Broadway production and national Tour of Annie. . . .

Id. at 22a. The reverse side of the application form contained the "Official Rules [of] Macy's Search for Broadway's New `Annie.' " See id. at 23a. In addition to explaining the two-part audition process, the official rules provided, in relevant part:

1. All participants must be accompanied by a parent or legal guardian and must bring completed application forms to one of the Macy's audition locations . . . and be prepared to audition. . . .

2. The "Annie" selected at the "Annie-Off-Final Callback" will be required to work with a trained dog. The tour commences in Fall 1996, with a Broadway opening tentatively scheduled for Spring 1997, [and] with a post-Broadway tour to follow.

***

6. [Y]ou and your parent or legal guardian are responsible for your own conduct, and hereby release Macy's . . . and the Producers . . . from any liability to or with regard to the participants and/or her parent or legal guardian with respect to the audition(s).

***

8. All determinations made by the Producers or their designated judges are being made at their sole discretion and each such determination is final.

Id.3 Unlike Macy's contract with the producers, neither the
(Text continued on page 6)

---

3. Because the District Court relied heavily on the official rules in rendering its decision, we provide them here in full:

1. All participants must be accompanied by a parent or legal guardian and must bring completed application forms to one of the Macy's audition locations on the dates and times listed on the reverse of this form and be prepared to audition. Only one parent or legal guardian may accompany each participant.

2. The "Annie" selected at the "Annie-Off-Final Callback" will be required to work with a trained dog. The tour commences Fall 1996, with a Broadway opening tentatively scheduled for Spring 1997, [and] with a post-Broadway tour to follow. Parent(s) or guardian(s) will accompany tour children. Additional information on arrangements for the final call-back and show rehearsals and performances will be provided to each regional finalist selected to attend the "Annie-Off-Final Callback" audition in New York City.

3. By participating, you agree to follow these Official Rules and you consent to the taking of a photograph, for identification purposes only. You also agree that Macy's (and/or a Macy's designee) may use your name, likeness, biographical data and/or [sic] voice for advertising, promotional activities and/or publicity, whether or not related to the audition and also acknowledge that such use requires neither any further permission nor any compensation. Participants who are members of Actors' Equity Association must identify themselves to an event representative as such, and will not be audio or video taped during the audition process. All application forms are the sole property of Macy's and Macy's is not responsible for any lost, destroyed, incomplete, illegible or otherwise deficient or unusable application forms.

4. In order to participate in the audition, you must complete and return the reverse application form, be a U.S. resident, between the ages of 7 and 12 as of June 2, 1996[,] and you must be available for the final audition on Thursday, August 8, 1996[,] in New York City.

5. Macy's may require that you verify your date of birth and may require that you provide a certified copy of your birth or baptismal certificate, school records or other document that states your date of birth.

6. Participants' parents or legal guardians are responsible for any tax obligations and expenses you may incur (such as the cost of travel or hotel accommodations) for the initial audition. The Classic Annie Production Limited Partnership (the "Producers") will provide

travel and hotel accommodations to finalists selected for the "Annie-

5

official rules4 nor any of the promotional materials included a provision informing the participants that the winner of the Search would receive only the opportunity to enter into a standard actors' equity contract with the producers.

Joanna and her mother signed the official rules and proceeded to the initial audition at the King of Prussia store. Macy's publicized the event by placing balloons, signs, pins, and other promotional materials advertising "Macy's Search for Broadway's New `Annie' " throughout the store. After auditioning hundreds of "Annie" hopefuls, the producers selected Joanna as the regional finalist. In a press release, Macy's announced Joanna's success to the public: "One in Ten She'll Be a Star!!! Macy's Brings Local Girl One Step Closer Towards `Tomorrow' to Become Broadway's New `Annie.' " Id. at 77a. The press release further provided:

> Philadelphia's own, twelve year-old Joanna Pacitti, will join nine other talented girls for a final audition to cast the title role in the 20th Anniversary production of the classic Tony Award-winning musical, Annie, coming to Broadway this season. . . . Ten finalists, most of whom were selected from over two thousand "Annie" hopefuls

_____

> Off" call-back in Macy's Herald Square on Thursday, August 8, 1996. In addition, you and your parent or legal guardian are responsible for your own conduct, and hereby release Macy's East, Inc., its affiliates and each of their respective officers, directors, employees, agents, successors and assigns (for purposes of this Paragraph 6, all included within the term "Macy's") and the Producers and their successors and assigns from any liability to or with regard to the participants and/or her parent or legal guardian with respect to the audition(s).

> 7. The audition is subject to all applicable laws and regulations.

> 8. All determinations made by the Producers or their designated judges are being made at their sole discretion and each such determination is final.

> App. at 23a.

4. Throughout the remainder of this opinion, we refer to the official rules and the application form as the "official rules."

6

> . . ., will vie for the chance to become Broadway's new
> "Annie."

Id. (emphasis in original).

At the producers' expense, Joanna and her mother traveled to New York City for Joanna to participate in the "Annie-Off-Final Call Back" at Macy's Herald Square store. After auditioning for two days, the producers selected Joanna to star as "Annie" in the 20th Anniversary Broadway production. Again, Macy's announced Joanna's success to the public, referring to her as "Broadway's New `Annie.' " See id. at 59a-83a.

Joanna and her mother met with the producers and signed an "Actors' Equity Association Standard Run-of-the-Play Production Contract." See id. at 133a-68a. Consistent with the Actors' Equity Association's rules governing production contracts, the producers retained the right to replace Joanna with another actor at any time as long as they paid her salary through the term of her contract. See id. at 168a.

For nearly a four-month period, Joanna performed the role of "Annie" in the production's national tour. In so doing, Joanna appeared in over 100 performances and in six cities. In February 1997, approximately three weeks before the scheduled Broadway opening, the producers informed Joanna that her "services [would] no longer be needed," and she was replaced by her understudy. Id. at 12a.

On March 21, 1997, plaintiffs filed suit against Macy's in Pennsylvania state court, alleging breach of contract and the following tort claims: (1) fraudulent misrepresentation, (2) equitable estoppel, (3) public policy tort, (4) breach of implied covenant of good faith and fair dealing, and (5) punitive damages. See id. at 15a-21a. In particular, plaintiffs alleged that Macy's failed to deliver the prize it had offered, i.e., the starring role of "Annie" on Broadway, and that Macy's knew it could not award this prize but promoted its ability to do so nonetheless. See id. Macy's subsequently removed the suit to federal district court based on diversity.

7

During discovery, plaintiffs sought to uncover information on the relationship between Macy's and the producers and on the pecuniary benefit Macy's received from sponsoring the Search. Macy's objected to their request, and the District Court limited discovery to "what promises, if any, were made by defendant prior to and at the final audition . . . in New York City that the person selected at that audition would appear in the role as Annie." Id. at 38a. Plaintiffs moved for reconsideration, and the District Court denied that motion on December 19, 1997. See id. at 50a.

Macy's then moved for summary judgment, contending that it did not deprive Joanna of any prize she had been promised and that her rights were limited by the terms of her contract with the producers. See id. at 24a, 126a. In support of its motion, Macy's proffered, among other things, its contract with the producers, which, as explained above, specified that the successful contestant would receive only the opportunity to enter into a standard actors' equity contract with the producers.

The District Court granted summary judgment in favor of Macy's. See Pacitti v. Macy's, No. Civ. A. 97-2557, 1998 WL 512938 (E.D. Pa. Aug. 18, 1998). Addressing plaintiffs' breach of contract claim, the District Court concluded that the contract was unambiguous and capable of only one reasonable interpretation -- i.e., that Macy's offered only an audition for the opportunity to enter into a standard actors' equity contract with the producers for the title role in "Annie." See id. at *3-4. Therefore, the Court rejected plaintiffs' contention that Macy's offered Joanna a guaranteed Broadway opening, see id. at *4, and the Court concluded:

> Plaintiffs received the benefit of their bargain by being offered a contract with the Producers for the "Annie" role, in exchange for Ms. Pacitti participating in "Macy's Search for Broadway's New Annie." . . . When the Producers offered a contract to Plaintiffs consistent with the terms of the Official Rules[,] any possible obligation Macy's had to Plaintiffs was fully met.

Id.

8

After rejecting plaintiffs' breach of contract claim, the District Court turned to their tort claims. See id. Reasoning that each cause of action was predicated upon the assertion that Macy's offered Joanna the role of "Annie" on Broadway, and concluding that Macy's made no such representation, the District Court granted Macy's motion for summary judgment on these claims as well. See id.

Plaintiffs then took this appeal. In their notice of appeal, plaintiffs state only that they appeal from the District Court's order granting summary judgment for Macy's. See App. at 235a. In this appeal, however, plaintiffs also argue that the District Court abused its discretion in limiting the scope of discovery.

II.

A. We turn first to plaintiffs' argument that the District Court erred in granting summary judgment in favor of Macy's on the breach of contract claim. We exercise plenary review over a grant of summary judgment and apply the same legal standard used by the District Court. See Hullet v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994). In so doing, we evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. See id. We conclude that the District Court erred.

Under the law of Pennsylvania,[5]"[t]he promoter of a [prize-winning] contest, by making public the conditions and rules of the contest, makes an offer, and if before the offer is withdrawn another person acts upon it, the promoter is bound to perform his promise." Cobaugh v. Klick-Lewis, Inc., 561 A.2d 1248, 1249 (Pa. Super. Ct. 1989) (quoting Annotation, Private Rights and Remedies Growing Out of Prize-winning Contests, 87 A.L.R.2d 649, 661). An

_____

5. Because the laws of New York and Pennsylvania are identical in all aspects material to the resolution of this case, and because the parties do not assert a preference for the law of one jurisdiction over the other, we, like the District Court, will not engage in a choice of law analysis. See Pacitti v. Macy's, No. Civ. A. 97-2557, 1998 WL 512938, at *2 n.2 (E.D. Pa. Aug. 18, 1998). In addressing plaintiffs' breach of contract claim, however, we refer only to the law of Pennsylvania.

9

offer has been defined as "a manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Cobaugh, 561 A.2d at 1249 (citing Restatement (Second) of Contracts S 24; 8 P.L.E. Contracts S 23). The offer to award a prize results in an enforceable contract if the offeree performs the required action before the offer is withdrawn. See id.

Here, the parties entered into an enforceable contract under Pennsylvania law. Macy's offered girls the opportunity of becoming "Broadway's New `Annie' " by participating in and winning the auditions, and Joanna participated in and won the auditions. Therefore, the dispute in this appeal relates to the parties' interpretation of that contract and, in particular, to the question whether the District Court properly found that the contract is unambiguous. Determining whether a contract is ambiguous is a legal question, and our review is plenary. See Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980).

The purpose of contract interpretation is to ascertain and effectuate the objectively manifested intentions of the contracting parties. See Hullet v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994) (citing Mellon Bank, 619 F.2d at 1009). The court first determines whether the contract is ambiguous. See Hullet , 38 F.3d at 111 (citing Stendardo v. Federal Nat'l Mortgage Ass'n, 991 F.2d 1089, 1094 (3d Cir. 1993)). A contract is ambiguous if it is capable of more than one reasonable interpretation. See Mellon Bank, 619 F.2d at 1011 (defining ambiguity as an "[i]ntellectual uncertainty [or] the condition of admitting two or more meanings, of being understood in more than one way, or referring to two or more things at the same time. . . ."). If the contract as a whole is susceptible to more than one reading, the factfinder resolves the matter. See Hullet, 38 F.3d at 111. On the other hand, where it is unambiguous and can be interpreted only one way, the court interprets the contract as a matter of law. See id.

In determining whether a contract is ambiguous, the court "assumes the intent of the parties to an instrument is `embodied in the writing itself, and when the words are

10

clear and unambiguous the intent is to be discovered only from the express language of the agreement.' " Id. (citing County of Dauphin v. Fidelity & Deposit Co., 770 F. Supp. 248, 251 (M.D. Pa.), aff'd, 937 F.2d 596 (3d Cir. 1991)). This does not mean, however, that the court is confined to the "four corners of the written document." Hullet, 38 F.3d at 111 (citing Mellon Bank, 619 F.2d at 1011). Rather, the court reads the contract in the context in which it was made. See Hullet, 38 F.3d at 111 (citing Steuart v. McChesney, 444 A.2d 659, 662 (Pa. 1982)). Therefore, to determine the parties' intentions, the court may consider, among other things, "the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." Hullet, 38 F.3d at 111 (quoting Mellon Bank, 619 F.2d at 1011).

In this case, the District Court concluded that the contract was unambiguous and capable of only one reasonable interpretation -- i.e., that Macy's offered only an audition for the opportunity to enter into a standard actors' equity contract with the producers for the title role in "Annie." See Pacitti v. Macy's, No. Civ. A. 97-2557, 1998 WL 512938, at *3-4 (E.D. Pa. Aug. 18, 1998). In reaching this conclusion, the Court noted that the official rules repeatedly referred to the promotion as an "audition," as opposed to a "contest," and vested "sole discretion" in the producers to make final determinations. See id. at *3. Hence, the District Court found that "Plaintiffs could not reasonably have relied upon Macy's as the selector of `Annie' or as a controller of the Producers," id., and that "it was obvious that Macy's was promoting auditions for the benefit of the Annie Producers." Id. at *4. The District Court also found that plaintiffs "knew that while Macy's was promoting the search, it was not the entity that would be contracting with the new `Annie.' " Id. at *3. Rather, the District Court noted, plaintiffs "wholly expected" to sign a standard actors' equity contract with the producers and, according to the Court, their expectation is evidenced by the fact that they executed such a contract after Joanna won the Search. See id. The Court explained further:

> The contract which she signed with the Producers did not guarantee her that she would open on Broadway,

11

but instead considered her to be like every other actor in "Annie" who had won their role through an audition process but could be replaced at the Producers' discretion pursuant to the standard equity contract.

Id. Therefore, the District Court rejected plaintiffs' contention that Macy's offered Joanna a guaranteed Broadway opening, see id. at *4, and the Court concluded:

Plaintiffs received the benefit of their bargain by being offered a contract with the Producers for the "Annie" role, in exchange for Ms. Pacitti participating in "Macy's Search for Broadway's New Annie." . . . When the Producers offered a contract to Plaintiffs consistent with the terms of the Official Rules[,] any possible obligation Macy's had to Plaintiffs was fully met.

Id.

Applying the standards discussed above, we conclude that the District Court erred in determining that the contract was capable of only one reasonable interpretation. Plaintiffs' interpretation -- that Macy's offered the prize of performing as "Annie" on Broadway for at least some period -- is a reasonable alternative to that of the District Court.

The official rules and promotional materials referred to the promotion as "Macy's Search for Broadway's New `Annie.' " The official rules provided that the producers and Macy's were "conducting a talent search for the new `Annie' to star in the 20th Anniversary Broadway production," and the advertisement in the Philadelphia Inquirer promised that "[t]he starring role in this 20th Anniversary Broadway Production and National Tour could be yours!" From these assertions, one reasonably could conclude that Macy's offered the winner of the Search the prize of starring as "Annie" on Broadway. In addition, the use of the word "audition," as opposed to "contest," in the official rules does not make plaintiffs' interpretation unreasonable. As plaintiffs assert:

[T]he word `audition' refers to the process a contestant must undergo before she can `win' the prize. . . . It follows, one would think, the girl selected after the `final audition' has won something more than an `audition.'

12

Appellants' Br. at 20-21 (emphasis in original).

Moreover, it is not unreasonable to conclude that Macy's had the ability to offer the winner of the Search the starring role on Broadway. The official rules provided that:

> Annie, America's most beloved musical[,] and Macy's, the world's largest store, are conducting a talent search for a new "Annie" to star in the 20th Anniversary Broadway production and national Tour of Annie. . . .

App. at 22a (emphasis added). That passage suggests that Macy's and the producers jointly promoted and hosted the Search. It does not indicate any relative imbalance of authority in favor of the producers. Nor do we believe that the clause vesting "sole discretion" in the producers supports only the interpretation that the producers were "the sole determiners of the Annie role." Pacitti, 1998 WL 512938, at *3 (emphasis added). Rather, that clause can be interpreted more narrowly as only restricting Macy's from selecting the winner of the auditions.

Further, Macy's at no point revealed -- either through its printed materials or other means -- that the winner of the Search would receive only the opportunity to sign a standard actors' equity contract with the producers. 6 Nor do the facts suggest that plaintiffs -- none of whom was a member of the Actors' Equity Association -- had any knowledge greater than that provided by Macy's. 7 We do not believe that Macy's role was so "obvious" that it need not

_____

6. Macy's should have manifested its intention in the contract by limiting or qualifying its offer accordingly. See Cobaugh , 516 A.2d at 1250-51 (noting that it is the duty of the drafter of the contract to exercise due care in explaining its offer so as not to mislead the public); Hutchinson v. Sunbeam Coal Corp., 519 A.2d 385, 390 n.5 (Pa. 1986) ("[I]n determining the intention of the parties to a written contract, the writing
must be construed against the party drafting the document.").
7. We disagree with the District Court's assertion that based on the general release clause, it is clear that plaintiffs"knew that while Macy's was promoting the search, it was not the entity that would be contracting with the new `Annie.' " Pacitti, 1998 WL 512938, at *3. That clause provides:

        [Y]ou and your parent or legal guardian are responsible for your own
        conduct, and hereby release Macy's . . . and the Producers . . . from
        any liability to or with regard to the participants and/or her parent

or legal guardian with respect to the audition(s).

App. at 23a. As is clear from the language quoted above, that clause not only releases Macy's but also the producers.

13

have limited its offer to public, and we find it telling that Macy's contract with the producers contained qualifications on the prize to be offered. Therefore, we conclude that it was reasonable for plaintiffs to believe that Macy's offered the starring role of "Annie" on Broadway.

We reach this conclusion even though plaintiffs executed a standard actors' equity contract with the producers. Courts may consider the subsequent actions of the contracting parties to ascertain the parties' intentions and resolve any ambiguities. See Department of Transp. v. Mosites Constr. Co., 494 A.2d 41, 43 (Pa. Commw. Ct. 1985) ("The intention of the parties must control the interpretation of the contract but if the intent is unclear from the words of the contract, we may examine extrinsic evidence including consideration of the subject matter of the contract, the circumstances surrounding its execution and the subsequent acts of the parties."); see also In re Estate of Herr, 161 A.2d 32, 34 (Pa. 1960). Joanna's contract with the producers, however, does not demonstrate plainly and unambiguously that when plaintiffs contracted with Macy's, they "wholly expected" to execute a standard actors' equity contract with the producers.

For these reasons, we hold that the contractual language is ambiguous, and its interpretation should be left to the factfinder for resolution. Accordingly, the District Court erred in concluding that Macy's is entitled to judgment as a matter of law.

B. Macy's also contends that plaintiffs' claims are barred by the express release in the official rules. The official rules provide, in pertinent part:

> [Y]ou and your parent or legal guardian are responsible for your own conduct, and hereby release Macy's . . . and the Producers . . . from any liability to or with regard to the participants and/or her parent or legal guardian with respect to the audition(s).

App. at 23a. That paragraph simply releases Macy's from liability "with respect to the audition(s)." It does not allow Macy's to escape liability arising from this action. We therefore reject Macy's contention.

14

C. With respect to the tort causes of action, plaintiffs maintain that the District Court erred in granting summary judgment. As noted above, the District Court dismissed these claims because it had rejected the predicate upon which each claim was based, i.e., that Macy's offered the successful participant the role of "Annie" on Broadway. See Pacitti, 1998 WL 512938, at *4. Because we conclude that the contract reasonably may be interpreted to make such an offer, we reverse on these claims as well and remand for further proceedings.

III.

We now turn to plaintiffs' contention that the District Court abused its discretion by limiting the scope of discovery.[8] Specifically, plaintiffs argue that the District Court's discovery order precluded them from uncovering facts relevant to their fraudulent misrepresentation claims. Macy's asserts that review of this issue is improper and, in the alternative, that the District Court's order was a proper exercise of discretion. We conclude that review is appropriate and that the District Court abused its discretion.

A. As a preliminary matter, we must determine whether we have jurisdiction to review the discovery order. Macy's argues that we lack jurisdiction because plaintiffs' notice of appeal does not indicate that they are appealing the discovery order. In their notice of appeal, plaintiffs specify only the District Court's order of August 19, 1998, granting summary judgment for Macy's. See App. at 235a.[9] We

_____

8. Citing Arnold Pontiac-GMC, Inc. v. General Motors Corp., 786 F.2d 564, 568 (3d Cir. 1986), and Mannington Mills, Inc. v. Congoleum Indus., Inc., 610 F.2d 1059, 1073 (3d Cir. 1979), plaintiffs also argue that they were not given sufficient opportunity to conduct discovery to withstand Macy's motion for summary judgment and that therefore reversal of the summary judgment order is required. In response, Macy's contends that because plaintiffs failed to file a Rule 56(f) motion, they have not preserved this issue for appeal. Because we are reversing on the breach of contract claim, we need not address this issue.

9. The notice of appeal provides, in full:

15

conclude that plaintiffs' notice of appeal from the District Court's final judgment is sufficient to support the Court's earlier discovery order.

Federal Rule of Appellate Procedure 3(c) states that the notice of appeal must "designate the judgment, order or part thereof appealed from." Fed. R. App. P. 3(c). However, we liberally construe the requirements of Rule 3(c). See Drinkwater v. Union Carbide Corp., 904 F.2d 853, 858 (3d Cir. 1990); Williams v. Guzzardi, 875 F.2d 46, 49-50 (3d Cir. 1989). Thus, we have stated:

> [W]hen an appellant gives notice that he is appealing from a final order, failing to refer specifically to earlier orders disposing of other claims or other parties does not preclude us from reviewing those orders.

Shea v. Smith, 966 F.2d 127, 129 (3d Cir. 1992) (citing Murray v. Commercial Union Ins. Co., 782 F.2d 432, 434 (3d Cir. 1986)). And we have explained: "[S]ince . . . only a final judgment or order is appealable, the appeal from a final judgment draws in question all prior non-final orders and rulings." See Drinkwater, 904 F.2d at 858 (exercising jurisdiction over unspecified order because finality doctrine barred plaintiff from appealing that order until after the entry of final judgment) (citing Elfman Motors, Inc. v. Chrysler Corp., 567 F.2d 1252, 1253 (3d Cir. 1977) (per curiam)); see also Polonski v. Trump Taj Mahal Assocs., 137 F.3d 139, 144 (3d Cir.), cert. denied, 119 S. Ct. 66 (1998) ("[Liberal] treatment is particularly appropriate where the order appealed is discretionary and relates back to the judgment sought to be reviewed."); Tabron v. Grace, 6 F.3d

_____

> Notice is hereby given that Joanna Pacitti, a minor, by Joseph Pacitti and Stella Pacitti, her parents and guardians, plaintiffs in the
> above-named case, hereby appeal to the United States Court of Appeal[s] for the Third Circuit from an order granting summary judgment in favor of defendant Macy's and Macy's East and against plaintiffs which dismissed the action as to defendant Macy's and Macy's East. The said Order hereby appealed from was entered in this action on the 19th day of August, 1998.

App. at 235a.

16

147, 153 n.2 (3d Cir. 1993) ("[W]e construe notices of appeal liberally as covering unspecified prior orders if they are related to the specified order that was appealed from."); Wright, Miller & Cooper, Federal Practice & Procedure, Jurisdiction 3d S 3949.4 ("[A] notice of appeal that names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment under the general rule that appeal from a final judgment supports review of all earlier interlocutory orders.").

We have reviewed orders not specified in the notice of appeal where: (1) there is a connection between the specified and unspecified order, (2) the intention to appeal the unspecified order is apparent, and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues. See Polonski, 137 F.3d at 144 (exercising jurisdiction over order granting attorney's fees even though notice of appeal specified only the order granting summary judgment); Tabron, 6 F.3d at 153 n.2 (reviewing order denying request for counsel even though notice of appeal specified only the order granting summary judgment).

Review is appropriate here. The discovery order is sufficiently related to the order granting summary judgment. The final judgment rule barred plaintiffs from appealing the discovery order until the District Court granted Macy's motion for summary judgment. Plaintiffs' notice of appeal from the final judgment, therefore, brought up for review the earlier interlocutory discovery order. Cf. Drinkwater, 904 F.2d at 858; Polonski, 137 F.3d at 144; Tabron, 6 F.3d at 153 n.2; Wright, Miller & Cooper, Federal Practice & Procedure, Jurisdiction 3d S 3949.4. Moreover, Macy's had notice of plaintiffs' intent to appeal the discovery order since plaintiffs sought review of the entire judgment and argued the merits of the discovery order in their opening appellate brief. See Polonski, 137 F.3d at 144 (stating that "the appellate proceedings clearly manifest an intent to appeal"); see also Canady v. Crestar Mortgage Corp., 109 F.3d 969, 974 (4th Cir. 1997) (noting that arguing merits of issue in opening appellate brief puts appellee on notice as to that issue). And finally, we discern no prejudice to Macy's. Accordingly, we have jurisdiction.

17

B. Having found that we have jurisdiction to review this issue, we must next determine whether the District Court abused its discretion in limiting discovery to "what promises, if any, were made by defendant prior to and at the final audition . . . in New York City that the person selected at that audition would appear in the role as Annie." App. at 38a. Plaintiffs contend that the District Court abused its discretion by unduly limiting discovery to preclude them from obtaining information relevant to their fraudulent misrepresentation claims. We review the District Court's discovery order for abuse of discretion. See Arnold Pontiac–GMC, Inc. v. General Motors Corp., 786 F.2d 564, 568 (3d Cir. 1986).

The Federal Rules of Civil Procedure provide, in pertinent part:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party. . . . The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). It is well recognized that the federal rules allow broad and liberal discovery. See In re Madden, 151 F.3d 125, 128 (3d Cir. 1998) ("Pretrial discovery is . . . `accorded a broad and liberal treatment.' ") (citing Hickman v. Taylor, 329 U.S. 495, 507 (1947)); see also Wright, Miller & Marcus, Federal Practice & Procedure, Civil 2d S 2007 ("The rule does allow broad scope to discovery and this has been well recognized by the courts.").

To succeed on a claim for fraudulent misrepresentation under Pennsylvania law, plaintiffs must establish the following elements: (1) a misrepresentation, (2) a fraudulent utterance, (3) an intention to induce action on the part of the recipient, (4) a justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as a proximate result. See Banks v. Jerome Taylor & Assocs., 700 A.2d 1329, 1333 (Pa. Super. Ct. 1997). To prove these

18

elements, plaintiffs must demonstrate that Macy's fraudulently misrepresented that the successful participant would perform as "Annie" on Broadway, that it did so with the intent to induce participation in the Search, and that Joanna relied to her detriment upon the misrepresentation.

Plaintiffs seek production of the following: (1) Macy's communications with, and relationship to, the producers regarding the terms of the contract that the producers intended to offer the successful contestant and (2) the pecuniary benefit Macy's received as a result of the Search. See Appellants' Br. at 12, 24. This information could shed light on Macy's knowledge that it could not offer a Broadway opening and its motives for failing to limit the offer accordingly. Thus, we conclude that the discovery sought here is directly relevant to the subject matter of this dispute.

We also find it noteworthy that Macy's submitted its contract with the producers in support of summary judgment. As previously noted, the federal rules permit discovery of, among other things, "any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . ." Fed. R. Civ. P. 26(b)(1) (emphasis added).

Macy's asserts that the only relevant representations are "those to which plaintiffs were . . . privy" and "upon which plaintiffs could have reasonably relied." Appellee's Br. at 34. This "what they don't know can't hurt them" argument is unconvincing. The fact that plaintiffs were not privy to the information that Macy's possessed when Joanna relied on its representations and participated in the Search forms the very basis of plaintiffs' fraudulent misrepresentation claims.10

_____

10. Plaintiffs also argue that the District Court erred in limiting the number of depositions. In light of our disposition here, the District Court
on remand can reconsider whether additional depositions are necessary to effectuate plaintiffs' discovery needs with respect to their fraudulent misrepresentation claims. Only if one of the factors in Federal Rules of Civil Procedure 26(b)(2) is present should the Court limit the number of depositions. See Fed. R. Civ. P. 26(b)(2) (setting forth situations in which
courts may limit the number of depositions.)

19

Accordingly, we conclude that the District Court erred in limiting discovery.

IV.

For the reasons discussed above, we reverse the grant of summary judgment on all claims and remand for further proceedings in accordance with this opinion. We also reverse and remand for plaintiffs to conduct discovery consistent with this opinion.

20

WILLIAM STAFFORD, Senior District Judge, dissenting.

I cannot agree that the district judge erred in granting summary judgment in favor of Macy's. Macy's offered Joanna Pacitti the opportunity of starring in the 20th Anniversary Broadway production and national tour of "Annie." Joanna Pacitti received that opportunity. She auditioned for the part of Annie; she was selected by the show's producers to play the part of Annie; and she, in fact, played the part of Annie, performing in over one hundred performances in six cities during the production's national tour. She did not, however, appear on Broadway because the producers decided to replace her before the Broadway opening.

The district court concluded, and I agree, that Joanna Pacitti received the benefit of her bargain with Macy's. Because I do not believe that her contract with Macy's was subject to the interpretation urged by Plaintiffs, I must respectfully dissent.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

21