NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1776

_____

ESTATE OF FRANK P. LAGANO,

Appellant

v.

BERGEN COUNTY PROSECUTORS OFFICE; MICHAEL MORDAGA; VARIOUS
JOHN DOE DEFENDANTS, whose individual identities or wrongful acts are not now
known to Plaintiff

_____

On Appeal from United States District Court
for the District of New Jersey
(D.C. No. 2:12-cv-05441)
District Judge: Honorable Katharine S. Hayden

_____

Submitted Under Third Circuit L.A.R. 34.1(a) on
May 23, 2024

Before: RESTREPO, FREEMAN, and McKEE, *Circuit Judges*

(Opinion filed: September 22, 2025)

_____

OPINION*

_____

McKEE, *Circuit Judge*.

---

* This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not
constitute binding precedent.

The Estate of Frank P. Lagano appeals two District Court Orders denying certain requests for additional discovery and granting summary judgment against the Estate on its state-created danger claim under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c). For the following reasons, we will affirm the District Court's November 23, 2021 Order[1] denying the Estate's additional discovery requests. We will also affirm the District Court's March 24, 2023 Order granting summary judgment.[2]

## I.

In a prior appeal in this case, we held that the Estate's claims were not time-barred and vacated the District Court's finding that defendants Michael Mordaga and the Bergen County Prosecutors Officer ("BCPO") were immune from suit.[3] On remand, the District

---

[1] The Estate's Notice of Appeal did not specify that it intended to appeal the District Court's November 23, 2021 Order affirming the Magistrate Judge's discovery orders. We ordinarily only have jurisdiction to review orders that are specified in Notice of Appeal. However, "we liberally construe notices of appeal" and may exercise jurisdiction over judgments "where (1) there is a connection between the specified and unspecified orders; (2) the intention to appeal the unspecified order is apparent; and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues." *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 269 (3d Cir. 2013) (cleaned up) (internal quotations omitted). Here, the Estate argues that the District Court should not have addressed summary judgment without granting additional discovery. Opening Br. 44-59. Therefore, the specified and unspecified orders are connected. Moreover, the Estate raised specific challenges to the District Court's handling of various discovery issues and thus made clear that it intended to appeal the District Court's November 23, 2021 Order. Lastly, BCPO and Mordaga fully briefed responses to the Estate's discovery arguments and are therefore not prejudiced. As such, we will exercise jurisdiction over the Estate's challenge to the November 23, 2021 Order.

[2] For a detailed delineation of the facts underlying this matter, *see Estate of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 852-53 (3d Cir. 2014) (hereinafter "*Estate of Lagano I*").

[3] *See generally Estate of Lagano I*, 769 F.3d at 857-61.

2

Court found that neither party was entitled to immunity. The Estate now challenges the District Court's management of various discovery matters and its grant of summary judgment to each of the defendants. Because the Estate sought further discovery under Rule 56(d), we will first address the District Court's discovery orders.[4]

**II.**[5]

**A. The District Court did not abuse its discretion when it denied the Estate leave to take additional discovery.**

"We review discovery rulings for abuse of discretion."[6] "To find such abuse it is usually necessary to conclude that there has been an interference with a 'substantial right' . . . or that the discovery ruling is . . . 'a gross abuse of discretion resulting in fundamental unfairness in the trial of the case.'"[7] A District Court abuses its discretion when it issues a decision that rests on a "clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact."[8] We "will not disturb [discovery orders] absent a showing of actual and substantial prejudice."[9]

---

[4] *Dowling v. City of Phila.*, 855 F.2d 136, 139 (3d Cir. 1988) ("The court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.").
[5] The District Court had jurisdiction over the Estate's federal claims pursuant to 28 U.S.C. § 1331, and we have jurisdiction to review the District Court's final orders pursuant to 28 U.S.C. § 1291.
[6] *See Miller v. Beneficial Mgmt. Corp.*, 977 F.2d 834, 841 (3d Cir. 1992).
[7] *Marroquin-Manriquez v. I.N.S.*, 699 F.2d 129, 134 (3d Cir. 1983) (explaining that the party seeking discovery has the burden of showing that the District Court's denial of its discovery request "constituted a gross abuse of discretion resulting in fundamental unfairness") (internal quotations omitted).
[8] *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 127 (3d Cir. 1993).
[9] *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 281 (3d Cir. 2010) (citing *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1032 (3d Cir. 1997)).

3

## 1. The Estate's 56(d) Declaration.[10]

The Estate is generally correct that the District Court erred by not *expressly* ruling on its pending 56(d) declaration.[11] However, any such error was harmless because the District Court properly considered and denied the Estate's request for additional discovery.[12] The District Court found that the dispositive issue was whether the Estate could prove that the BCPO and Mordaga caused Lagano's death, and reasoned that Lagano's alleged informant status was immaterial to proving causation.[13] It was not an abuse of discretion to deny the Estate's request for additional discovery of immaterial evidence.[14]

---

[10] The Federal Rules of Civil Procedure were amended in 2010. Prior to the 2010 amendments, Rule 56(d) appeared as 56(f). There are no substantive differences between the pre-2010 and post-2010 versions of the rule. 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2741 n.1 (2025).

[11] *In re Avandia Mktg., Sales & Prods. Liab. Litig.*, 945 F.3d 749, 761 (3d Cir. 2019) ("A district court abuses its discretion when it grants summary judgment in favor of the moving party 'without even considering' a Rule 56(d) declaration filed by the nonmoving party.").

[12] The District Court denied the Estate's request for additional discovery based on arguments the Estate raised in its brief in opposition. *See* JA 5992 n.4 (Vol. 14) (District Court summary judgment opinion addressing the Estate's discovery arguments, as raised in its brief in opposition to summary judgment).

[13] JA 5992 n.4 (Vol. 14) ("The Estate's argument that it was precluded from obtaining discovery which would support the inference that Lagano was an informant before his death' is unpersuasive because the key inquiry is . . . whether Mordaga's alleged disclosure caused Lagano's death." (internal quotations and alternations omitted)).

[14] *Gorrio v. Francis*, 141 F.4th 90, 94 (3d Cir. 2025) ("[A]n appellant must 'show that the district court's denial of discovery made it impossible to obtain crucial evidence.'").

4

Furthermore, the Estate did not express a genuine need for additional discovery.[15] The Estate admitted that it submitted a 56(d) declaration "in the alternative" because "sufficient evidence already exists to present triable issues of fact." A 56(d) declaration is appropriate when a party cannot present facts sufficient to support its opposition to summary judgment; not when it believes it can.[16]

## 2. The Estate's request to depose Rule 30(b)(6) corporate witnesses.

The Estate further claims that the Magistrate Judge erred by denying its request to depose 30(b)(6) witnesses from the BCPO and the New Jersey Division of Criminal Justice ("DCJ"). The Estate fails to show why alleged corruption in the BCPO is material to its claims or that it had no other means to obtain that information. The Estate's argument for why it needed to depose a BCPO 30(b)(6) witness relies on our opinion in *Estate of Lagano I*.[17] There, we made no factual findings, nor did we imply that the matter was based on widespread corruption in the BCPO. We merely mentioned in a footnote that "[t]he Sweeney Complaint alleged widespread corruption within the BCPO."[18] Our prior decision does not prove that there was corruption in the BCPO, or that any such corruption was material to the Estate's claims, nor does it support the Estate's need for further discovery of that allegation.

---

[15] *See Robin Constr. Co. v. United States*, 345 F.2d 610, 614 (3d Cir. 1965) (explaining that a Rule 56(d) declaration "must be genuine and convincing to the court rather than merely colorable").

[16] *See* Fed. R. Civ. P. 56(d) (providing the procedure for a nonmoving party to request additional discovery "when facts are unavailable to the nonmovant").

[17] *See generally* 769 F.3d 850 (3d Cir. 2014).

[18] *Id.* at 851 n.2.

Moreover, even if proof of corruption was material, the Estate has not established that it was unable to procure that information through other means, such as through its deposition of Mordaga or from the voluminous discovery it received from the BCPO. It is unclear why that information could not "have been discovered by [its] prior counsel during the [years] long period in which discovery in this case was open."[19] And the Estate does not explain how its inability to depose a BCPO 30(b)(6) witness prevented it from obtaining crucial evidence that was "directly relevant to the subject matter of this dispute."[20]

The Estate also claims it needed a DCJ 30(b)(6) witness to generate relevant information about Sweeney's employment records; the DCJ's files pertaining to Lagano's murder; internal materials concerning the "Jersey Boyz" investigation that were not previously disclosed; and DCJ's Operation Heat materials, insofar as they tend to show that Lagano was a confidential informant in that investigation. As we explain *infra* in Section II(B), even if Lagano was a confidential informant, that alone is not enough to prove the causation necessary to succeed on the Estate's state-created danger claim.

Accordingly, there was no abuse of discretion in denying the Estate's request to depose 30(b)(6) corporate witnesses from the BCPO and the DCJ.

3. **The Estate's Request for Policing Expert Discovery.**

---

[19] *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 341 n.4 (3d Cir. 1990).
[20] *Pacitti v. Macy's*, 193 F.3d 766, 778 (3d Cir. 1999).

There is no sufficient indication that the nature of the Estate's claims required expert discovery or that discovery of a policing expert should have been allowed.[21] The Estate does not explain how a policing expert's review of "protected information" was relevant to proving that Mordaga's statement—"Don't count on Sweeney helping you, he's going to jail" ("Sweeney comment")[22]—caused Lagano's death, the dispositive issue in this dispute.[23] Excluding expert discovery before summary judgment is not an abuse of discretion if the information sought is not relevant to summary judgment.[24]

### 4. Paul Morris's Interrogatories.

The Estate argues that the District Judge erred in affirming the Magistrate Judge's Order instructing the Estate to submit interrogatories in lieu of deposing Paul Morris. It also claims that the Magistrate Judge improperly rewrote the approved interrogatories. The record does not support finding that the Magistrate Judge rewrote or effectively served her own interrogatories on Morris in a manner that "made it impossible to obtain crucial evidence."[25] Moreover, the Estate had already deposed Mordaga, who possessed

---

[21] *See LabMD Inc. v. Boback*, 47 F.4th 164, 187-88 (3d Cir. 2022) (explaining that precluding expert discovery before summary judgment may deprive a party of its substantial right to prove its case if the nature of its accusations "strongly indicate that . . . expert testimony was to be anticipated and should have been allowed").
[22] JA 5985 (Vol. 14).
[23] The Estate's January 2022 letter—the only evidence it presents as documenting its request—does not ask for a policing expert or establish how its review of "protected information" was relevant to proving the Estate's state-created danger claim. JA 4130 (Vol. 11).
[24] *See e.g., Baer v. Chase*, 392 F.3d 609, 630 (3d Cir. 2004) (finding that a damages expert cannot "bootstrap liability issues on summary judgment").
[25] *Gorrio*, 141 F.4th at 94.

the information the Estate sought from Morris, and the District Court still allowed the Estate to submit ten proposed interrogatories, followed by objections and a reply.

Unlike the district court in *Sempier v. Johnson & Higgins*,[26] here, the District Court did not substitute the interrogatories with "its own work product."[27] Rather, it struck questions that were beyond the scope of permitted discovery and amended the remaining questions to include the phrase: "identify to the best of your recollection." Our decision in *Sempier* allows a district court "through appropriate intervention, [to] suggest the proper manner in which questions should be asked" "if discovery has reached an impasse or a nonproductive stage either through counsel's obstinacy, intransigence, or even incompetence."[28] Permitting the Estate to submit amended interrogatories was not fundamentally unfair to the Estate, especially since the Judge allowed the Estate to do so *after the official end of discovery*.

Furthermore, the Estate's single, conclusory sentence that the amended interrogatories compelled vague and evasive answers, leaves us with little to assess whether the interrogatories prevented it from obtaining crucial evidence from Morris. Therefore, we find no abuse of discretion.

## 5. The District Court's Failure to Adhere to a Discovery "Mandate."

Lastly, the Estate argues that the District Court precluded it from obtaining evidence that the *Estate of Lagano I* Court identified as relevant. The Estate appears to

---

[26] 45 F.3d 724, 736 (3d Cir. 1995) (finding that the District Court abused its discretion when it replaced a party's interrogatories with a re-written, vague "Bill of Particulars").
[27] *Id.*
[28] *Id.* at 736.

believe that we issued a discovery mandate regarding evidence of corruption in the BCPO and evidence from Sweeney's Complaint. We did no such thing. In *Estate of Lagano I*, we merely vacated and remanded for reconsideration the District Court's finding that the BCPO and Mordaga were immune from suit and determined that the Estate's claims could proceed.[29]

The District Court "allotted ample time for discovery"[30] and did not limit or prohibit discovery of information that was "directly relevant to the subject matter of this dispute."[31] Therefore, the District Court did not abuse its discretion when it denied the Estate even more discovery before granting summary judgment.

## B. The District Court did not err in granting summary judgment.

We review the grant of summary judgment *de novo* and draw all reasonable inferences in the manner most favorable to the non-moving party.[32] Because we agree with the District Court's holding that the Estate cannot prove causation, we will affirm its grant of summary judgment.

The Due Process Clause provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."[33] But it "imposes no affirmative duty to protect a citizen who is not in state custody."[34] The special relationship

---

[29] *Estate of Lagano I*, 769 F.3d at 854.

[30] *Arnold Pontiac-GMC, Inc. v. Gen. Motors Corp.*, 786 F.2d 564, 577 (3d Cir. 1986).

[31] *Pacitti*, 193 F.3d at 778.

[32] *Ye v. United States*, 484 F.3d 634, 636 (3d Cir. 2007).

[33] U.S. Cont. amend. XIV.

[34] *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006).

exception[35] and the state-created danger exception are the two exceptions to that rule.[36] The Estate argues that the BCPO and Mordaga are liable for Lagano's murder under the latter exception.

To succeed on a state-created danger claim, a party must establish four elements.[37] Because the District Court granted summary judgment after concluding that the Estate failed to make out the fourth, we focus our analysis on that element. The issue under the fourth element of a state-created danger claim is "whether the state actors used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur."[38] Thus, the fourth element amounts to establishing causation.[39]

The Estate alleges one affirmative act that established state-created danger: Mordaga's Sweeney comment.[40] It claims that the District Court erred by requiring a direct causal connection between that statement and Lagano's murder. We have

---

[35] The Estate claims that the District Court erred by not addressing its special relationship theory, which it presumably raised when it referred to the relationship between "CI and informant," and in the joint final pretrial order "where the Estate explained the risks of breaching the relationship between a CI and its handler/agency." Opening Br. 14. Merely explaining the nature of a CI/handler relationship is not enough to plead that either the BCPO or Mordaga were in a special relationship with Lagano, let alone that they breached that relationship. In fact, the contention that the BCPO and Mordaga violated a special relationship does not comport with the Estate's theory of the case—i.e., that Lagano served as a DCJ confidential informant. "Because [the Estate] neither pled nor adduced proof of a 'special relationship,' that exception is not at issue here." *Ye*, 484 F.3d at 637 n.1.

[36] *Id.*

[37] *Bright*, 443 F.3d at 281 (listing the four elements of a state-created danger claim).

[38] *Id.* at 283 (internal quotations omitted).

[39] *See id.* at 283 n.7; *see also Bennett v. City of Phila.*, 499 F.3d 281, 287 (3d Cir. 2007) ("[T]his court stated that petitioners must allege affirmative acts that were the 'but for cause' of the risks they faced.").

[40] JA 5985 (Vol. 14) ("Don't count on Sweeney helping you, he's going to jail.").

10

repeatedly held that the fourth element requires a showing of but for causation, such that "there must be a direct causal relationship between the affirmative act of the state and plaintiff's harm."[41]  The District Court applied the correct legal standard and properly concluded that the BCPO and Mordaga met their burden of showing that the Estate cannot establish causation.

The record is devoid of facts sufficient to establish that Mordaga's Sweeney comment created a danger to Lagano or made him more vulnerable to danger.[42]  And after more than three years of discovery, the absence of evidence to support the Estate's claim was not caused by its inability to take additional discovery.  First, beyond the assertions raised in Sweeney's memorandum, there is no corroboration for the allegation that Mordaga ever said, "Don't count on Sweeney."  Trobiano, the only other person currently living who was present when Mordaga allegedly made the comment, denied ever hearing Mordaga utter it.  Moreover, he testified that there was never an occasion where he was at a restaurant with Lagano and Mordaga approached the table yelling.  And he explained that he did not dine with Lagano and the late-Frank Walsh at the Stony Hill Inn in 2007.[43]

---

[41] *Ye*, 484 F.3d at 643 (quoting *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 432 (3d Cir. 2006)).

[42] As Mordaga accurately points out in his brief: "Since loansharking for an organized crime family is a high-risk occupation, discovery revealed that any number of people might benefit from Lagano's death."  Mordaga Resp. Br. 9-10.

[43] JA 4289 (Vol. 11) (Trobiano Deposition) (explaining that there was never an occasion where he "socialize[d] with Mr. Walsh and Mr. Lagano"). *But see* JA 4780 (Vol. 12) (Corinne Lagano testifies that the day Mordaga allegedly made the Sweeney comment, she saw Lagano, Trobiano, and Walsh dining together).

Second, the record does not support a finding that Trobiano is associated with organized crime, such that Mordaga's alleged disclosure in front of him caused Lagano's death. Sweeney's memorandum creates, at most, an attenuated connection. Trobiano explained that no agency has contacted him about Lagano's murder, nor has anyone ever questioned him about Lagano's alleged status as a confidential informant. Again, Lagano's murder remains unsolved.

Third, the Sweeney memorandum, which is the Estate's primary source of evidence of a "motive" for Lagano's murder, is riddled with inconsistencies and lacks sufficient detail. It does not say when or where the statement was made; it provides no date or time for the encounter; and it claims Lagano left dinner and went to another location where Mordaga made the Sweeney comment. It is unclear whether Trobiano also went to the second location. Contrary to the Estate's contention, the deposition of Corinne Lagano does not add details that either contextualize or corroborate the memorandum. Corinne testified that Frank Walsh was also present when Mordaga made the Sweeney comment. Walsh's alleged presence is noticeably absent from the Sweeney memorandum. She also testified that she never overheard the conversations between Mordaga and her father.

Even viewing these facts in a light most favorable to the Estate, we conclude that there is no genuine dispute as to whether Mordaga's Sweeney comment created a danger to Lagano or rendered him more vulnerable to danger than if Mordaga had never made the statement, such that it would fit within the state-created danger doctrine. Summary judgment was therefore proper.

12

**C. The District Court did not abuse its discretion in denying the Estate leave to file a sur-reply.**

Lastly, the District Court did not commit reversible error when it denied the Estate leave to file a sur-reply to address Mordaga's allegedly new claims regarding the credibility and admissibility of the Sweeney Memorandum. Granting leave to file a sur-reply is a matter left to the sound discretion of the District Court.[44] The District Court assumed the truth of the Sweeney memorandum at summary judgment, expressly credited the comments made in the memorandum, but declined to determine the admissibility of the memorandum because "regardless of whether the memorandum [was] admissible, the Estate cannot establish a key element of its state-created danger claim: causation."[45] We find no abuse of discretion where the Estate was not permitted to respond to claims that had no bearing on the District Court's grant of summary judgment.[46]

**III.**

For the foregoing reasons we will affirm the District Court's November 23, 2021 Order and we will affirm the District Court's March 24, 2023 Order.

---

[44] *See generally Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 276 (3d Cir. 2001); *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 817 (3d Cir. 1982).

[45] JA 5993 (Vol. 14).

[46] The Estate loosely argues that Mordaga raised new legal arguments and exhibits that it was precluded from responding to. We cannot meaningfully consider that allegation because the Estate does not tell us what those new arguments were.