NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3907
_____

UNITED STATES OF AMERICA, ex rel.
MARY BETH PILECKI-SIMKO and TOM GIUNTA,
Appellants

v.

THE CHUBB INSTITUTE; THE CHUBB CORPORATION; CHUBB AMERICA
SERVICE CORPORATION and HIGH-TECH INSTITUTE,  INC.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. Action No. 2-06-CV-03562)
District Judge: Honorable Garrett E. Brown, Jr.
_____

Argued June 21, 2011

Before: CHAGARES, JORDAN, and GREENAWAY, JR., Circuit Judges

(Opinion Filed:  September 6, 2011)
_____

Timothy J. Matusheski, Esq. (Argued)
Gary S. Graifman, Esq.
Kantrowitz, Goldhamer & Graifman, P.C.
747 Chestnut Ridge Road, Suite 200
Chestnut Ridge, NY 10977

Michael S. Green, Esq.
Green & Associates, LLC
522 Route 18
P.O. Box 428
East Brunswick, NJ 08816

*Attorneys for Appellants*

Thomas Hylden, Esq. (Argued)
Larry S. Gondelman, Esq.
Powers, Pyles, Sutter & Verville, P.C.
1501 M Street, N.W.
Seventh Floor
Washington, DC 20005

Eric A. Savage, Esq.
Littler Mendelson, Esq.
One Gateway Center
Eighth Floor
Newark, NJ 07102

*Attorneys for Appellees The Chubb Institute and High-Tech Institute*

Michael R. McDonald, Esq. (Argued)
Christine A. Amalfe, Esq.
Megan Frese Porio, Esq.
Gibbons P.C.
One Gateway Center
Newark, NJ 07102

*Attorneys for Appellee The Chubb Corporation*

_____

OPINION
_____

GREENAWAY, JR., Circuit Judge

Plaintiffs Mary Beth Pilecki-Simko and Tom Guinta ("Appellants") filed a *qui tam*

action against The Chubb Institute ("TCI"), The Chubb Corporation ("TCC"), Chubb

2

America Service Corp.,[1] and High-Tech Institute, Inc. ("HTI"), pursuant to the False Claims Act ("FCA"),[2] 31 U.S.C. § 3729 et seq.[3]  Appellants alleged that TCI knowingly caused false claims to be presented to the Government and made or used false statements to get false claims paid by the Government.  These claims are rooted in Appellants' allegation that TCI made misrepresentations to the Department of Education ("DOE") that wrongfully enabled it to secure student financial aid in the form of loans and grants from the federal government.  They also sought liability for this conduct against TCI's relevant corporate parents, HTI and TCC, on the basis of their alleged control of TCI's actions.

Appellants appeal the District Court's denial of their Motion for Reconsideration of the Court's denial of leave to amend their complaint and the order dismissing, with prejudice, their second amended complaint ("SAC").  For the reasons discussed below, we will affirm the orders of the District Court.  Additionally, we will grant Appellee

---

[1] Chubb America Service Corporation was listed as a defendant in the case below.  It does not appear that the entity was ever served below or that counsel entered an appearance for that entity.  No appearance was entered on behalf of that entity on this appeal.

[2] "The FCA allows a private citizen, called a relator, to bring an action in the name of the United States, and the government may intervene if it so chooses. . . . The FCA permits the relator to bring the action in the absence of the government's intervention."  U.S. ex rel. Quinn v. Omnicare Inc., 382 F.3d 432, 436 n.7 (3d Cir. 2004).  As in Quinn, the government declined to intervene in this case.

[3]  The FCA reaches "all fraudulent attempts to cause the Government to pay out sums of money."  Quinn, 382 F.3d at 438 (internal quotation marks omitted) (quoting Harrison v. Westinghouse Savannah River, 176 F.3d 776, 788 (4th Cir. 1999)).

3

TCC's Motion for Damages and Costs, pursuant to Federal Rule of Appellate Procedure 38.

## I. **BACKGROUND**

We write primarily for the parties and recount only the essential facts.

This matter is a qui tam action brought by Appellants against their former employer, TCI. The FCA prohibits, in relevant part: [4]

> (1) knowingly present[ing], or caus[ing] to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval;
>
> (2) knowingly mak[ing], us[ing], or caus[ing] to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

31 U.S.C. § 3729(a)(1)-(2). (West 2003 & Supp. 2008). In their claim, Appellants allege that Appellees, with knowledge of their falsity, presented or caused to be presented to the United States Government claims, and caused payments for the claims to be made by the

---

[4] The Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, § 4, 123 Stat. 1616 (2009) modified the FCA; it now imposes liability on

> [A]ny person who—
>
> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim[.]

31 U.S.C. § 3729(a)(1). Neither party suggests that the revisions apply to this case, nor would it appear to materially affect our analysis. For those reasons, we have cited the pre-amendment subsections, § 3729(a)(1)-(2).

Government, pursuant to § 3729(a)(1); and knowingly made, used or caused to be made or used false records or statements to get a false or fraudulent claim paid by the Government, pursuant to § 3729(a)(2).[5] Appellants allege that TCI knowingly caused false claims to be filed by making misrepresentations to the DOE, its accrediting agencies, and students that wrongfully enabled TCI to secure student financial aid pursuant to Title IV of the Higher Education Act ("HEA").

"When an educational institution wishes to receive federal subsidies under Title IV and the [HEA], it must enter into a Program Participation Agreement with the [DOE], in which it agrees to abide by a panoply of statutory, regulatory, and contractual requirements." U.S. ex rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1168 (9th Cir. 2006). Appellants claim that TCI knowingly violated Title IV requirements by falsely certifying compliance with the Program Participation Agreement (PPA)[6] and knowingly continuing to submit students' applications for financial aid, which included certifications that the students were eligible for Title IV financial aid, although TCI was allegedly in

---

[5] Appellants also alleged a) that Appellees were liable for conspiring to defraud the government under § 3729(a)(3); b) that TCC, Chubb America Services Corporation, and HTI were liable under a corporate veil-piercing theory; and c) that HTI was liable under a successor liability theory. Because Appellants do not raise these issues on appeal, the issues are waived.

[6] Specifically, in their SAC, Appellants claims that one of the "terms and conditions" of the PPA that Chubb submits to the DOE in order to be eligible to receive Title IV funds is the incentive compensation ban. In the PPA, the educational institution certifies that "it will not provide . . . any commission, bonus or other incentive payment based directly or indirectly on success in securing enrollments . . ." (App. at 107, SAC ¶76.)

violation of the incentive compensation ban contained within the PPA.[7]

Appellees moved to dismiss Appellants' SAC for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) and failure to satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b). The District Court granted the motions. The District Court analyzed Appellants' claims under the implied false certification theory, which is premised "on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment." U.S. ex rel. Willis v. United Health Grp., Inc., No. 10-2747, ---F.3d ----, 2011 WL 2573380, at *7 (3d Cir. June 30, 2011) (citation and internal quotation marks omitted).[8] The District Court found that Appellants' allegations of Appellees' misconduct failed to plead a FCA claim with particularity under Rule 9(b), which governs pleading for special matters, including fraud. Alternatively, the District

---

[7] Appellants alleged other violations on TCI's part including permitting ineligible students to apply for Title IV financial aid, false certification of satisfactory progress of students, and misrepresentations regarding employment placement. These violations were not raised on appeal; we need not address them now.

[8] Since the District Court's ruling, our Court has recognized the application of the implied false certification theory of an FCA claim in the Medicare context. See Willis, ---F.3d ----, 2011 WL 2573380, at *7. In that case, we also clarified that under the express false certification theory, "an entity is liable under the FCA for falsely certifying that it is in compliance with regulations which are prerequisites to Government payment in connection with the claim for payment of federal funds," and under an implied false certification theory, liability attaches "when a claimant seeks and makes a claim for payment from the Government without disclosing that it violated regulations that affected its eligibility for payment." Id.

Court also found that TCI's salary compensation policy fell within the FCA's safe harbor; thus, saving TCI from liability.

Additionally, the Court found insufficient support in Appellants' pleading for their corporate liability and veil-piercing claims against TCC and HTI. The District Court dismissed the SAC, without prejudice, and permitted Appellants to explain why they should be given a third opportunity to amend, ordering Appellants to show cause why the SAC should not be dismissed with prejudice.

Appellants responded to the Order to Show Cause with two allegations--that TCI (1) falsely certified compliance with the incentive compensation ban imposed by Title IV's incentive compensation ban and (2) misrepresented employment placement statistics. The District Court found that Appellants' submissions did not cure their previous pleading deficiencies and determined that further amendment would be futile. The Court dismissed the SAC with prejudice.[9]

Appellants then moved for reconsideration of the District Court's dismissal with prejudice to the extent that it dismissed Appellants' claim that TCI falsely certified compliance with Title IV's incentive compensation ban. For the first time, Appellants argued that (1) the safeharbor is an affirmative defense not appropriately raised in a motion to dismiss; (2) the safeharbor regulation had only been in effect since 2003 and

---

[9] The District Court's May 17 Order conditioned dismissal of the SAC upon the Government's consent, pursuant to 31 U.S.C. § 3730. The Government filed a supplemental statement of interest on June 14, 2010 stating that its consent is not required for that type of involuntary dismissal. This is not an issue on appeal.

therefore did not apply to allegations about TCI's conduct prior to that time; and (3) the safe harbor did not cover appropriations such as gifts and offers of trips to its top admissions officers.

The District Court denied Appellants' Motion for Reconsideration, finding that it was procedurally improper and Appellants had not demonstrated a clear error of law resulting in manifest injustice. Appellants timely appealed and now challenge the District Court's dismissal of their claims and its denial of the request for leave to amend.[10] Also before us is TCC's Motion for Costs and Fees, filed pursuant to Federal Rule of Appellate Procedure 38.[11]

## II. ANALYSIS

### A. Motion to Dismiss

Appellants initially claim that the District Court erred because it applied the heightened pleadings standard of Rule 9(b), reserved for claims of fraud, to their

---

[10] Appellants' Notice of Appeal states that they appeal the District Court's Order denying their Motion for Reconsideration. Federal Rule of Appellate Procedure 3(c) provides that a notice of appeal must "designate the judgment, order or part thereof being appealed." FED. R. APP. P. 3(c)(1)(B). We liberally construe Rule 3(c)'s requirements. See Pacitti v. Macy's, 193 F.3d 766, 776 (3d Cir. 1999); Drinkwater v. Union Carbide Corp., 904 F.2d 853, 858 (3d Cir. 1990). We have reviewed orders not specified in the notice of appeal where: "(1) there is a connection between the specified and unspecified order, (2) the intention to appeal the unspecified order is apparent, and (3) the opposing party is not prejudiced and has a full opportunity to brief the issues." Pacitti, 193 F.3d at 777 (citing Polonski v. Trump Taj Mahal Assocs., 137 F.3d 139, 144 (3d Cir. 1998)). Therefore, we will consider the District Court's dismissal with prejudice of Appellants' SAC.

[11] The District Court had subject matter jurisdiction, pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331. We have jurisdiction, pursuant to 28 U.S.C. § 1291.

8

complaint, which they assert does not make allegations of fraud or mistake. Even if their complaint did not make such allegations, which is itself an implausible argument, Appellants failed to raise this argument before the District Court and offer no explanation for that failure. Therefore, it is waived and we will not address it. See In re DVI, Inc. Sec. Litig., 639 F.3d 623, 643 n.30 (3d Cir. 2011) (citing Srein v. Frankford Trust Co., 323 F.3d 214, 224 n.8 (3d Cir. 2003) ("we will not consider issues that are raised for the first time on appeal absent compelling reasons") (internal quotation marks omitted)).[12]

Appellants next argue that even if Rule 9(b) applies to their FCA claim, the District Court misapplied the rule because it required Appellants to plead knowledge at a level reserved for private securities fraud cases, requiring Appellants to allege more facts about Appellees' scienter than it should have.[13]

We exercise plenary review of the District Court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which

---

[12] We also noted in Willis that we have previously held that plaintiffs must plead FCA claims with particularity in accordance with Rule 9(b). ---F.3d ----, 2011 WL 2573380, at *10 n.9 (citing U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., 149 F.3d 227, 234 (3d Cir. 1998)).

[13] In their Motion for Reconsideration, and on appeal, Appellants only raise the claim of TCI's alleged violation of the incentive compensation plan. Thus, arguments relating to other grounds for liability in their SAC are waived.

relief can be granted. See Santiago v. Warminster Twp., 629 F.3d 121, 128 (3d Cir. 2010).[14]

We have held that a prima facie claim under the FCA requires a plaintiff to show that "(1) the defendant presented or caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent." Willis, ---F.3d ----, 2011 WL 2573380, at *6 (quoting U.S. ex rel. Schmidt v. Zimmer, Inc., 386 F.3d 235, 242 (3d Cir. 2004)).

The FCA states that the terms "knowing" and "knowingly" --

(A) mean that a person, with respect to information--

(i) has actual knowledge of the information;
(ii) acts in deliberate ignorance of the truth or falsity of the information; or
(iii) acts in reckless disregard of the truth or falsity of the information; and

(B) require no proof of specific intent to defraud;

31 U.S.C. § 3729(b)(1).

Our Court has not yet analyzed the knowledge pleading requirement under Rule 9(b) for an FCA claim of this nature; however, we need not resolve the question of whether Appellants sufficiently pled an FCA claim under Rule 9(b) because Appellants fail to state a plausible claim for relief under the more lenient standards of Rule 8. See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) ("To survive a motion to dismiss, a

---

[14] This is the same standard of review pertaining to a dismissal under Rule 9(b) for failure to satisfy the pleading with particularity requirement. Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007).

10

complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (quotation and citation omitted)).  "Rule 9 does not give [a plaintiff] license to evade the less rigid-though still operative-strictures of Rule 8 . . . [a]nd Rule 8 does not empower respondent to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss."  Id. at 1954; see also Cafasso ex rel. v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (explicitly recognizing that Iqbal's plausibility requirement applies to FCA claims subject to Rule 9(b) because they must comply with Rule 8(a), which requires the pleading of a plausible claim under Iqbal).

When reviewing a motion to dismiss, we construe the complaint "in the light most favorable to the plaintiff."  In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010) (internal quotation marks omitted) (quoting Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009).  A motion to dismiss, pursuant to the plausibility standard, should be granted if the plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).[15]  A complaint satisfies the plausibility standard when the factual pleadings "allow[] the court to draw the reasonable inference that the defendant is liable

---

[15] In their January 27, 2011 appellate brief, Appellants cite to the rule articulated prior to Iqbal and Twombly: that "the [c]ourt should not dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claims which would entitle him to relief." (Appellant's Br. at 16 (quoting Schmidt, 386 F.3d at 240).)  The Supreme Court rejected this standard.  See Twombly, 550 U.S. at 561-63.

11

for the misconduct alleged." Iqbal, 129 S.Ct. at 1949 (citing Twombly, 550 U.S. at 556).

This standard requires that plaintiff allege "more than a sheer possibility that a defendant

has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556.) "[A] plaintiff's obligation

to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."

Twombly, 550 U.S. at 555 (citation omitted) (alteration in Twombly).

To determine the sufficiency of a complaint under Twombly and Iqbal, we must

"tak[e] note of the elements a plaintiff must plead to state a claim," identify allegations

that, "because they are no more than conclusions, are not entitled to the assumption of

truth," and finally, "where there are well-pleaded factual allegations, a court should

assume their veracity and then determine whether they plausibly give rise to an

entitlement for relief." Santiago, 629 F.3d at 130 (citing Iqbal, 129 S.Ct. at 1947, 1950)

(internal quotation marks omitted); see also Great Western Mining & Min. Co. v. Fox

Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010).[16]

In this case, Appellants claim that they sufficiently pled knowledge for FCA

liability because they alleged that TCI (1) violated the incentive compensation ban; and

---

[16] Iqbal describes the process as a "two-pronged approach" but the Supreme Court took note of the elements a plaintiff must plead to state a claim before proceeding to its two-step approach. In Santiago, this Circuit deemed the process a three-step approach. 629 F.3d at 130.

(2) signed the PPA stating compliance with the ban.[17]  Appellants claimed at oral argument that paragraphs 73-79 of their SAC contained their allegations of facts supporting Appellees' knowledge.  These paragraphs include a description of "Chubb's" alleged violation of the incentive compensation ban through its "Admission Compensation Plan" and ranking of counselors based on their enrollment numbers (¶ 73); that Admission Representatives are graded with "scorecards" earning points for their percentage of enrollments (¶ 74); that the top ranking counselors are among the highest paid, receiving the highest salary as well as trips, awards, and gifts based on their enrollment numbers (¶ 75); a description of the PPA conditions (¶ 76); and a description of the student applications submitted by Chubb containing certification of eligibility under Title IV.  (¶ 78.)

However, the facts alleged therein, or anywhere else in the SAC, do not state a plausible claim to relief that TCI knew that its claims were false or fraudulent, an element

_____

[17] Appellants contend that under Rule 9(b), they were permitted to plead knowledge "generally."  Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b).  "'[G]enerally','" as stated in Rule 9(b), "is a relative term."  Iqbal, 129 S.Ct. 1937, 1954 (2009).  In that context, "[generally] is to be compared to the particularity requirement applicable to fraud or mistake."  Subsequently, "Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard.  It does not give him license to evade the less rigid-though still operative-strictures of Rule 8."  Id.

13

of Appellants' FCA claims. [18]  Instead, they contain conclusory allegations that "Chubb

knows that this claim . . . is false because Chubb knows its students are not eligible under

the Title IV program due to Chubb's violations of the HEA incentive compensation ban"

and is "ineligible for those funds because of its intentional violations of the HEA funding

statute."  It adds that "Chubb also knowingly uses the false records or statements

provided to the [DOE]" in their PPA that certifies compliance.  (App. at 108, ¶¶ 78-79.)

These are not sufficient facts to state a plausible claim to relief as they do not

allow us to "draw the reasonable inference" that TCI was liable for the misconduct

alleged, which required knowledge that the claims were false.  See Iqbal, 129 S.Ct. at

1949.  Further, Appellants' submissions in their response to the Court's Order to Show

Cause, which failed to include a proposed third amended complaint (an omission that we

---

[18] The Ninth Circuit's decision in Hendow, which reviewed an allegation of a false
certification claim under the FCA through violation of the Title IV incentive
compensation ban, also suggests that Appellants' knowledge pleading is deficient.  There,
although that court reversed the district court's 12(b)(6) dismissal of the relators'
complaint and articulated the essential elements of a FCA claim under a false
certification theory slightly differently than we have—(1) a false statement or fraudulent
course of conduct, (2) made with scienter, (3) that was material, causing (4) the
government to pay out money or forfeit moneys due—it found that relators properly
alleged scienter.
    The relators there "allege[d] that University staff openly bragged about
perpetrating a fraud, that the University had an established infrastructure to deceive the
government, and that the University repeatedly changed its policies to hide its fraud."
Hendow, 461 F.3d at 1175.  They further "allege[d] that the University provided
statements to the government that were intentional, palpable lie[s], made with knowledge
of the falsity and with intent to deceive."  Id. (internal citations and quotation marks
omitted).  In allaying relators' concerns about broadening liability for regulatory
violations, the court noted that "innocent or unintentional violations do not lead to False
Claims Act liability."  Id.

have held "is fatal to a request for leave to amend," Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007)), did not remedy this obvious pleading deficiency. The submissions relevant to Appellants' arguments on appeal include declarations from Appellants explaining the nature of TCI's incentive compensation plan, rather than asserting facts which allow an inference that their knowledge pleading is plausible.

Appellants' SAC does not state facts supporting a reasonable inference that TCI knew, acted in reckless disregard, or deliberately ignored that its submissions were false due to their alleged violation of the incentive compensation ban, and therefore did not survive Appellees' motion to dismiss under Rule 12(b)(6). Cf. U.S. ex rel. Lemmon v. Envirocare of Utah, Inc., 614 F.3d 1163, 1169 (10th Cir. 2010) (finding that relators' complaint contained sufficient factual allegations to support their implied false certification claims where they documented, among other things, the alleged violations and how defendant government contractor was aware of the violations, "listing specific instances in which Plaintiffs documented and/or informed their superiors of the violations.")

Here, Appellants do not allege similar facts, such as how Appellees documented, or were aware or informed of the violations, that would support a plausible claim that they knowingly submitted false claims. Because we resolve the dismissal on this ground,

we need not make a determination with respect to the District Court's allegedly heightened knowledge standard.[19]

B. Denial of Leave to Amend and Motion to Reconsider

"We review a denial of a motion for reconsideration for abuse of discretion, but we review the District Court's underlying legal determinations de novo and factual determinations for clear error." Howard Hess Dental Labs. Inc. v. Dentsply Intern., Inc., 602 F.3d 237, 245 (3d Cir. 2010) (citing Max's Seafood Café v. Quinteros, 176 F.3d 669, 673 (3d Cir. 1999)) (internal quotation marks omitted).[20]

The purpose of such a motion is to correct a clear error of law or to prevent a manifest injustice in the District Court's original ruling. Id. at 677. Such motions "are

---

[19] Appellants also claim that the District Court erred in ruling that only the implied certification theory applied to Appellants' claims against "Chubb" under the FCA, and that, in fact, under § 3729(a)(2), "Chubb caused [false statements] to be made by the Chubb institutions to the government and accrediting agencies that Chubb did not employ a compensation scheme wherein it compensated employees based directly or indirectly upon those employees' success in securing enrollments at a Chubb institution." (Appellant's Br. at 21.)

Presumably, Appellants reference to "Chubb" causing claims to be filed is to TCC or HTI. They claim that the District Court committed "reversible error" by ruling that only the implied certification theory applied to Appellants' claims against Chubb under the FCA, or just under § 3729(a) subsection one of the FCA, instead of recognizing that § 3729 (a) subsection two also applied under the express certification theory. (Id.) Although they cite no Third Circuit or other authority for this argument, we need not consider this argument as (1) it appears to have been raised for the first time on appeal; and (2) Appellants still would not state a claim under either § 3729(a)(1) or (2), as both require knowledge on the part of the party accused of fraud.

[20] We also review a denial of leave to amend for abuse of discretion. See Travelers Indem. Co. v. Dammann & Co., 594 F.3d 238, 243 n.3 (3d Cir. 2010).

16

granted for compelling reasons, such as a change in the law which reveals that an earlier ruling was erroneous, not for addressing arguments that a party should have raised earlier." United States v. Dupree, 617 F.3d 724, 732 (3d Cir. 2010) (citation and internal quotation marks omitted).

Appellants moved the District Court to reconsider its denial of leave to amend their SAC. However, the only specific arguments Appellants raise in their appeal, which does not discuss the standard of review for denial of leave to amend or denial of reconsideration, are unavailing, either because they were waived or otherwise have no impact on our alternate ground for dismissal.[21]

Appellants have not shown that the District Court abused its discretion in denying their Motion to Reconsider. The District Court, in its discretion, rejected Appellants' arguments about the safeharbor provision because they were untimely and Appellants

---

[21] Appellants' motion focused on the District Court's alternate ground for dismissal—that Appellees' incentive compensation plan was saved by the safe harbor within Title IV, and therefore, they could not have the requisite intent to violate the ban. Specifically, Appellants argued that: (1) the safeharbor is an affirmative defense not appropriately raised in a motion to dismiss; (2) the safeharbor regulation has only been in effect since 2003 and therefore did not encompass TCI's conduct before that date; and (3) appropriations such as gifts and "President's Club" trips to its top admissions representatives were not subject to the safeharbor.

The District Court rejected Appellants' arguments, finding first that the motion was procedurally improper for seeking to reargue matters previously argued before the Court and raising new arguments not presented in response to either the original motion to dismiss or Order to Show Cause. "These defects, alone, warrant denial of Relators' motion." (App. at 53.) Furthermore, none of Appellants' arguments about the safe harbor, repeated on appeal, cure their pleading deficiency to survive a Rule 12(b)(6) motion to dismiss. Lastly, they do not offer any explanation for their delay in raising their arguments about the safe harbor.

offered no explanation for this delay.

### C. TCC's Rule 38 Motion for Attorney's Fees and Costs

In its dismissal of Appellants' SAC, the District Court determined that Appellants failed to sufficiently plead veil-piercing or successor liability, as alleged against TCC and HTI. In their appeal, Appellants do not raise the issue of the District Court's dismissal of their claims for imposition of liability on TCC and HTI, nor did they raise this issue before the District Court in either their attempt to amend their SAC or their Motion for Reconsideration. However, both of these parties were included in this appeal. Based on its belief that its inclusion in the appeal was frivolous, TCC moved for attorney's fees and costs. Appellants responded to this motion on April 11, 2011.

"This court employs an objective standard to determine whether or not an appeal is frivolous" which "focuses on the merits of the appeal regardless of good or bad faith." Kerchner v. Obama, 612 F.3d 204, 209 (3d Cir. 2010) (citation and internal quotation marks omitted). In this case, the appeal—specifically against TCC—is frivolous. Even if we reversed the District Court's decision on any of the arguments that Appellants have made on appeal regarding the application of Rule 9(b), the sufficiency of Appellants' pleading under Rule 9(b), or the application of the safeharbor provision of Title IV, there is no possibility of reversal on the corporate liability claims. Appellants make no argument on appeal as to why their corporate liability claims were improperly dismissed. Further, no argument is advanced about the District Court's dismissal of these claims in their subsequent motions and pleadings before the District Court, including in their

18

Motion for Reconsideration.  Additionally, Appellants' proposed Third Amended Complaint, attached to their Motion for Reconsideration, did not name TCC as a defendant.  (App. at 547-67.)

Thus, the appeal against TCC is frivolous and, as TCC argues, "th[e] appeal never had any possibility of resulting in a reversal of the dismissal of The Chubb Corporation," (Appellee TCC's Br. at 2).  See, e.g., Nagle v. Alspach, 8 F.3d 141, 145 (3d Cir. 1993) (finding appeal frivolous where appeal "never had any possibility of resulting in a reversal" because appellants challenged only two of the four conclusions asserted by the district court to support its summary judgment for defendants and so, even if the court held for appellants on both asserted allegations of error, two unchallenged bases would remain and the district court's judgment would still be affirmed).

Appellants' response to the motion is unavailing.  Without addressing the District Court's corporate liability findings, Appellants assert, without any support, that the standard for a motion for reconsideration "does not necessitate that every claim previously claimed be appealed in order to obtain a favorable outcome."  (Appellant's Resp. Br. at 7.)  In this case, their only claims against TCC were not raised on appeal, and are therefore waived.  See Graden v. Conexant Sys., Inc., 496 F.3d 291, 296 n.7 (3d Cir. 2007) ("Absent compelling circumstances not present here, failing to raise an argument in one's opening brief waives it.")  They have not presented any explanation, let alone a compelling explanation, for why their claim against TCC is not waived.

Appellants' assertion at oral argument that their reference to "Chubb" includes

"all the Chubbs," and they therefore raised these issues in the appeal, is not persuasive, as they do not actually make any argument about their successor liability or corporate veil piercing claims that the District Court dismissed in its very first dismissal without prejudice.[22]

Appellants also argue that TCC's motion is premature since frivolousness of the appeal had not been decided. Rule 38 provides that "'[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.'" Kerchner, 612 F.3d at 209 (quoting FED. R. CIV. P. 38). We have determined that the appeal against TCC was frivolous, TCC filed a separate motion, and Appellants were given the opportunity to—and did—respond to TCC's Motion, as is required. Appellants present no authority supporting their argument that TCC's Motion was too early.

"The purpose of an award of attorneys' fees under Rule 38 is to compensate appellees who are forced to defend judgments awarded them in the trial court from appeals that are wholly without merit, and to preserve the appellate court calendar for cases worthy of consideration." Huck v. Dawson, 106 F.3d 45, 52 (3d Cir. 1997)

---

[22] Also telling is the District Court's statement in its opinion denying reconsideration that the Court "dismissed Relators' veil-piercing and successor liability claims without prejudice on March 22, 2010, and Relators did not seek leave to amend th[ose] claims in response to the Court's accompanying Order to Show Cause. Accordingly, the Court dismissed th[ose] claims with prejudice on May 17, 2010." U.S. ex rel. Pilecki-Simko v. Chubb Inst., No. 06-3562, 2010 WL 3463307, *1 n.1 ((D.N.J. Aug. 27, 2010) Appellants offer no meaningful response to this statement or the Court's conclusions therein.

(citation and internal quotation marks omitted). "Damages [under Rule 38] are awarded by the court in its discretion . . . as a matter of justice to the appellee." Beam v. Bauer, 383 F.3d 106, 108 (3d Cir. 2004) (citation and internal quotation marks omitted). An "important purpose [of a damages award] is to discourage litigants from unnecessarily wasting their opponents' time and resources." Nagle, 8 F.3d at 145. Because the appeal against TCC is frivolous and Appellants have not shown cause why just damages and costs should not be imposed, pursuant to Fed. R. App. P. 38, we will award to TCC, as a matter of justice, its requested damages and costs.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, we will affirm the District Court's order denying reconsideration of its denial of leave to amend Appellants' SAC, as well as its dismissal of Appellants' SAC. Additionally, we will grant Appellee TCC's Rule 38 Motion for Damages and Costs. TCC is directed to provide an itemized list of damages, including attorneys' fees associated with responding to this appeal, and a bill of costs, pursuant to Federal Rules of Appellate Procedure 38 and 39, within 14 days after the entry of the accompanying judgment in this case.